CASE 48—ACTION BY ANGELINA KLOSTERMAN AND OTHERS AGAINST THE.
C. & O. RY. Co., &C., TO RECOVER DAMAGES FOR THE UNAUTHOR-
IZED CONSTRUCTION OF A RAILROAD TRACK NEAR PLAINTIFF'S.
PROPERTY.—DEC. 17.

# Klosterman, &c. v. Chesapeake & Ohio Ry. Co., &c.

APPEAL FROM THE KENTON CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL. REVERSED.

RAILROADS—TRACKS IN THE STREET—DAMAGES TO ABUTTING OWNERS'
LIMITATION OF ACTION—MEASURE OF DAMAGES.

Held:   1. While the right to sue a railway company for damages.
caused to abutting property, by reason of the construction and
operation of a railway track in a street pursuant to legislative
and municipal authority, is barred by the five years' statutes of.
limitations, in a like action for damages for the construction and
operation of such track in a street without such authority, the
fifteen-year statute of limitation applies.

2. Where a railroad company is authorized by legislative and mu-
nicipal authority to construct and operate a single railway track
in a street, and concurrently constructs two tracks in such street,
an additional servitude is thereby imposed upon property abut-
ting on said street, and damages can be recovered by the own-
er of such property for the construction and operation of the
double track by an action instituted within fifteen years from
the construction of said tracks, and in such case the measure of
recovery is, whatever damages the abutting property owners
have sustained by reason of the construction and operation of
two tracks in said street, which they would not have sustained
by the construction and prudent operation of one track therein.

HARVEY MYERS, ATTORNEY FOR APPELLANT.

1. Authority to construct and operate a single track railway
upon the public streets of a municipality does not authorize the
construction or operation of a double track railway. Grants of
this character are construed most strongly against the grantee,
and nothing passes by implication.   The affirmative must be
shown by the claimant.   Silence is negation and doubt is fa-
tal to the claim.   N. W. Fertilizing Co. v. Hyde Park, U. S.

Klosterman, &c. v. Chesapeake & O. Ry. Co., &c.

Sup. Ct., 24 L. ed., 1038; Conn. v. Erie & N. E. R. R., 27 Pa. St., 339; P. A., &c., R. R. v. Phil. & Read. R. R., 157, Pa. St., 42; Woods on R. R., sec. 223; Ruttle v. E. L. & B. S. R. R., 10 S. W., 644.

2. Where a corporation undertakes to execute a power conferred by charter, it must act strictly within the limits of such power, and it must be conferred in express terms, for such powers never arise by implication. Harris on Damages, sec. 184; C. B. & Q. R. R. Co. v. Gurney, 139 Ill., 355.

3. Where a railroad company exceeds the powers conferred upon it by the Legislature, or unnecessarily exercises those powers in a manner which produces serious injury to property or its comfortable enjoyment, its acts create a nuisance which a court of equity will enjoin, or a court of law redress by damages. Wood on R. R., vol. 2, p. 1053; Porth v. Manhattan Ry. Co., 26; Jones & Spencer (N. Y. Superior Ct.) 374.

4. Where a railroad company exceeds the authority granted it to construct and operate its railroad in the streets of a city, or constructs and operates it in a manner not authorized by law, it constitutes a nuisance, and the statute of limitations does not run against the claim of persons, whose property is damaged by such nuisance.

JOHN GALVIN, B. D. WARFIELD AND EDWARD W. HINES, FOR APPELLEE.

PETITION FOR REHEARING.

POINTS AND CITATIONS.

1. The mandatory requirement of the charter of the bridge company that it should construct tracks connecting its bridge with the Kentucky Central Railroad was an implied grant of the use of the streets of the city for that purpose without the consent of the city, and the provision of the charter requiring a permit from the city council in order to connect with any depot in the city has no application.

The Legislature may grant to a railroad company the right to construct its tracks in the streets of a city without the consent of the municipality.    L. & N. R. R. Co. v. Orr, 91 Ky., 109; Ruttle, &c. v. City of Covington, 10 Rep., 766. Such legislative authority need not be expressly conferred, but may be given by implication.    2 Dillon on Municipal Corporations, sec. 707.

2. If the meaning of the charter be doubtful, the doubt should be resolved in favor of the practical construction adopted by all parties in interest for many years. Sutherland on Statutory Construction, sec. 312; State v. Severance, 49 Mo., 401; Givens' Exrs. v. Providence Coal Co., 22 Rep., 1217.

3. Even if a permit from the city council for the use of the streets was necessary, no reason existed why it should not be given by resolution, or even by mere acquiescence. And therefore, a resolution by the council reciting that it had granted the right of way was a sufficient permit. Pembroke v. Canada Central Ry. Co., 14 Am. & Eng. R. R. Cases, 117 (3 Ontario, 503.)

4. The acquiescence of the city council in the construction of the double track was at least sufficient to create an estoppel, as was also the acquiescence of the abutting lot owners.

One who acquiesces in the construction of a railroad on his land or over a street in front of his property thereby consents, and is estopped to maintain either ejectment or injunction. Halbert, &c. v. Maysville, &c. R. R. Co., 98 Ky., 661; Louisville, &c. Ry. Co. v. Stephens, &c., 96 Ky., 401; Ferguson, &c. v. Cov. and Cin. Elevated R. R. Co., &c., 22 Rep, 371; Porter v. Midland Railroad Co., 125 Ind., 476; Reichert v. St. Louis, &c. R. R. Co. (Ark.), 38 Am. & Eng. R. R. Cases, 453.

5. The doctrine of estoppel applies to a municipal corporation. Kneeland v. Gilman, 24 Wis., 39; Herman on Estoppel, sec. 1222; C. & N. W. Ry. Co. v. The People, ex rel. City of Elgin, 91 Ill., 251.

Even if there was neither legislative nor municipal authority for the construction of a double track, the statute of five years and not the statute of fifteen years applies. Kentucky Statutes, secs. 2505, 2515; Troy v. Cheshire R. R. Co., 23 N. H., 83; Elizabethtown, &c. R. R. Co. v. Combs, 10 Bush, 382; Ferguson v. Covington, &c R. T. & B. Co., 22 Rep., 371; L. & N. R. R. Co. v. Orr, 91 Ky., 109; Cosby, &c v. Owensboro, &c. R. R. Co., 10 Bush, 288; Roulston, &c. v. C. & O. Ry. Co., 21 Rep., 1507; Strickler v. Midland Ry. Co., 25 N. E. Rep., 455.

6. There is no evidence tending to show that a double track has caused any greater injury than a single track would have caused, and for that reason the peremptory instruction was proper.

SIMRALL & GALVIN, FOR APPELLEES ON PETITION FOR REHEARING.

POINTS AND AUTHORITIES.

1. This case is in every respect like the case of Roulstone v. the C. & O. Ry. Co. and the C. & C. E. R. R. and T. & B. Co., decided December 8, 1899, by Judge White and reported in 54 S. W. R., 2.

2. Presumption of legal authority of appellees to operate their railroad. Higdon v. Higdon, 6 J. J. Marshall, 51; Township of Pembroke v. Canada Central R. R., 3 Ontario Rep., 504; 14 Am.

and Eng. Ry. Cases, 117; Uline v. N. Y. C. R. R. Co., 101 N. Y., 98; Elliott on Railroads, sec. 1701.

3. Five years limitation applies, and not fifteen years. L. & N. R. R. Co. v. Orr, 91 Ky., 109; Stickley v. R. R., 93 Ky., 328; Onions v. C. & O. Ry., 53 S. W., 8; Roulstone v. C. & O. Ry. Co., 54 S. W., 2; Sec. 2515, Kentucky Statutes

4. All damages from lawful construction and prudent operation of railroad can be immediately established and must be recovered in one action. Elliott on Railroads, sec. 1004; E. & P. Ry. Co. v. Combs, 10 Bush, 362; J., M. & I. R. R. v. Esterle, 13 Bush, 667; L. & N. R. R. v. Zachritz, 13 Ky. Law Rep., 141; M. & B. S. R. R. v. Ingram, 16 Ky. Law Rep., 853; L. & N. R. R. v. Orr, 91 Ky., 109; Stickley v. C. & O. Ry. Co., 93 Ky., 328; C. & O. Ry. Co. v. Kleimeier, 49 S. W., 484.

5. Railroad, lawfully operated in street, is not an additional burden which, per se, vests in abutting owners right of action. Fulton v. Short Route Transfer Co., 85 Ky., 641, and cases. cited; Lexington R. R. Co. v. Appelegate, 8 Dana, 289; Kentucky & Indiana Bridge Co. v. Krieger, 93 Ky., 247.

6. When limitations once begin to run, subsequent disabilities do not stop the running thereof. Henderson v. Bonar, 11 Ky. Law Rep., 219; Ray v. Thurman, 13 Ky. Law Rep., 3; Shuffitt v. Shuffitt, 9 Ky. Law Rep., 207.

7. There can be no recovery for negligent or imprudent operation without allegation and proof thereof. Roulstone v. C. & O. Ry. Co., 54 Ky Law Rep., 2.

COURTLAND PRENTICE CHENAULT, for appellee, C. & O. Ry. Co.

The right to recover is not now affected by any question of authority. He can sue for damages for permanent injury if the street is used by authority. He can sue if it is without. The criterion of recovery is the same—permanent injury—destruction of so much of his right to enjoy his property.

Let us ask appellant a few questions:

1. What was the nature of your injury as set forth in this action? The answer is: That it was the blowing of whistles, the rumbling of the cars, the ringing of bells, the escape and exhaust of steam, etc., in such a manner as to make the property uninhabitable and unsalable.

2. When did this injury occur? The answer is: It has existed for a great length of time and I am only suing for five years back, and I expect to wait three or four more years and sue again.

3. What was and is the cause of these injuries? The answer is: The construction and operation of the railroad.

4. When was it constructed? Answer: In 1889.

This being true, the original cause of action was the construction and operation of the road in 1889, and the railroad being a permanent structure "all damages" (as said by Judge Pryor in the Orr Case) can be ascertained and determined when the road is constructed and operated. "That all may be recovered in a single action and therefore the statute of limitation begins and runs from the time the action could have been first instituted."

EDWARD W. HINES, FOR APPELLEE, L. & N. R. R. Co.

H. W. BRUCE, WALKER D. HINES, AND J. W. BRYAN, OF COUNSEL.

### POINTS AND CITATIONS.

1. The statute of five years applies to an action to recover damages for injury to abutting property from the construction of a railroad in a street, though the railroad may have been constructed without legislative or municipal authoriity.    Ferguson v. Covington, &c. R., T. & B. Co., 57 S. W., 460.

2. A railroad being a permanent structure, an abutting property owner's right of action for the injury to his property from the construction of a railroad in a street accrues as soon as the road is completed and put in operation, and is barred after five years from that time.    Ferguson v. Covington, &c. R., T. & B. Co., 57 S. W., 460; Troy v. Cheshire R. R. Co., 23 N. H., 83; L. & N. R. R. Co. v .Orr, 91 Ky., 109; Elizabethtown, &c. R. R. Co. v. Combs, 10 Bush, 382; Chicago, &c. R. R. Co. v. McAuley, 121 Ill., 160; Cosby, &c. v. Owensboro, &c. R. R. Co., 10 Bush, 288; Roulstone, &c. v. C. & O. Ry. Co., 21 Ky. Law Rep., 1507; I. Wood on Limitations; Watts v. Norfolk & Western R. R. Co. (W. Va.), 23 L. R. A., 674.

OPINION OF THE COURT BY JUDGE PAYNTER—REVERSING.

The former opinion of this court, delivered herein by Judge Hobson, is as follows:

"Frank A. Klosterman died on February 10, 1892, the owner of certain real estate in Covington, Kentucky. Appellants are his widow and children, six of the latter being infants. They filed this suit December 5, 1895, against the Chesapeake & Ohio Railway Company, the Covington & Cincinnati Elevated Railroad & Transfer & Bridge Company, and the Louisville & Nashville Railroad Company, to

recover damages in the sum of $7,000 for alleged injuries to the real estate received by them from the decedent; the widow being executrix of his will, and guardian of his children, and as such joined also in the suit. Issue was joined upon the petition, and on final hearing the court gave the jury a peremptory instruction to find for the appellees.

"Appellants' property is situated at the corner of Lewis and Craig streets. It has on it two brick houses. One is a three-story brick building, situated on the corner, and fronting on both streets. The first story is used as a storeroom for mercantile purposes; the second and third, as a residence. The other is a two-story dwelling fronting on Craig street. There is a small area or yard between the two houses. The railroad tracks complained of run diagonally across Craig and Lewis streets at their intersection. The nearest rail is six and one half feet from the gutter curb. Inside of the gutter curb is a sidewalk six feet wide. Both the buildings extend out to the sidewalk, so that at the corner the three-story brick house is only about fourteen feet from the nearest rail of the railroad track, or about eleven and one half feet from the side of the cars when passing. Craig and Lewis streets are each thirty feet wide, including the sidewalk on either side. The railroad at this point is a double track, and is used almost constantly day and night. Before the railroad was built, the property rented for forty-two dollars a month. Now it brings scarcely enough to pay taxes and insurance. The trains operated are many of them heavy freights, which jar and shake the houses to such an extent as to alarm the occupants and wake them at night. A large quantity of cinders and smoke is thrown into and upon the property sometimes filling the front rooms with smoke, and to such an extent that it is impracticable to keep the front

windows open at all.   Large quantities of cinders fall upon
the roof and yard, burning the paint off the roof, causing
it to rot, and unfitting the yard for such uses as the yard
of a residence is designed for.   The wall of the two-story
building is settled.   The noise, vibration and discomfort
from smoke and cinders are such that only an undesirable
class of tenants will rent the property for a residence, and
the storeroom is not desirable for a business place.   The
tracks take up substantially the intersection of the streets,
with the exception of six feet on each side, so as in a great
degree to interfere with the ingress or egress of wagons and
teams, from the fact that trains are passing so often day
and night.   There is no doubt, under the evidence, that
the property is desirably located, and was valuable before
the construction of the railroad, and by reason of its con-
struction has been largely unfitted for the purposes for
which it was intended, and greatly depreciated in value.
The railroad was constructed precisely as it is now in the
year 1889, and, the action not having been filed within
five years thereafter, the appellees interpose the plea of
limitation, and it was on this ground that the court below
gave the jury a peremptory instruction to find for appel-
lees.

"In Railroad Co. v. Orr, 91 Ky., 109, 12 R., 756, 15 S. W.,
8, this court held that a railroad must be regarded as a
permanent structure, and, when its construction in the
streets of a city is authorized by legislative and municipal
authority, all damages naturally resulting from the prop-
er operation of the road can then be ascertained and de-
termined, and the cause of action therefor is barred by
limitation after five years from the time the action might
first have been instituted.   This case has been followed in
so many subsequent causes that the question is not now

an open one, but we are not inclined to extend the rule beyond the limits thus laid down, or to apply it to a case where the construction of the railroad in the street is not authorized by legislative and municipal authority. As has been held by this court in several cases, and is recognized in section 242 of our present Constitution, the injury to property in cases of this character is substantially a taking of private property for public use, and, where this taking has not been done under proper authority of law, it should stand, as to limitation, on the same plane as any other taking of real estate. The structure being permanent, the action is not for a trespass upon the property, in which damages within the preceding five years may be recovered; but the question to be determined is, what will be a fair compensation to the owner of the property for the depreciation of the value of his property by the servitude that is thus placed upon it? When the construction of the railroad is authorized by law, all persons must take notice of this; and there are sound reasons of public policy for not extending the bar of limitation to those cases where the construction is not by authority of law, and the citizen can not well understand his rights. It remains therefore, to determine whether the tracks in question were constructed under proper legislative and municipal authority.

"On August 27, 1851, the council of the city of Covington granted to the Covington & Lexington Railroad permission to lay its road in Washington street. The Covington & Lexington Railroad was afterwards succeeded by the Kentucky Central Railroad, and on October 22, 1885, the city council granted to it, its successors or assigns, permission to extend its track from its terminus to a point on or near

the Ohio river, and 'the right of way for a single track
over such streets and alleys' as might be best for said com-
pany to use.   This grant was, in terms, limited to 'the
right of way for a single track.'   On December 17, 1887,
the Kentucky Central Railroad sold and assigned to the
Covington & Cincinnati Elevated Railroad & Transfer &
Bridge Company all of its rights, privileges and franchises
under and by virtue of these ordinances, and it is insisted
that it was justified in constructing the double track in
controversy under this authority.   But the original ordi-
nance made in 1851 granted a right of way only on Wash-
ington street, and the ordinance of October 22, 1885, in
express words, granted only a right of way for a single
track.   Where the authority is expressly limited to a single
track, it can not by construction be enlarged, for this would
be to violate the plain terms of the instrument.   Unless,
therefore, there was some other authority for building this
double track, the case does not fall within the rule laid down
in Railroad Co. v. Orr, above referred to.

"Appellees also rely on certain provisions of the charter
of the bridge company, and certain sections of the muni-
cipal authorities of Covington.   These will now be consid-
ered:   The bridge company was incorporated by an act ap-
proved April 4, 1884, under the name of the Covington &
Cincinnati Pier Bridge Company.   By an act approved
February 9, 1886, the name of the corporation was changed
to the Covington & Cincinnati Elevated Railroad & Trans-
fer & Bridge Company.   This act also contains the following
provision (1 Acts 1885-6, pp. 340, 343): 'Said corporation
is hereby authorized and empowered to construct, main-
tain and operate railroad tracks with necessary turnouts
and sidings upon the said bridge and the approach thereto.'
Section 3.   'The said corporation shall also have power to

construct a railway track with necessary turnouts and side-ings upon, over, along or across any public streets, roads, alleys, avenues or through or over any blocks of ground be-tween such streets for the purpose of making connection with the depots or railway tracks of any railroad in the city of Covington within such territorial limits as the city council of said city shall prescribe.' Section 4. 'The said company shall construct and maintain tracks connecting its bridge with the Kentucky Central Railroad in such man-ner as to enable other railroads to connect their lines of railway with said tracks approaching said bridge. Con-nections made by any other railroad with such connecting tracks shall be so made as to admit other roads to connect therewith; and any railroad now existing or to be hereafter constructed within the city of Covington shall have the right to connect its railway with said connecting tracks and shall have the right to use the same for the purpose of and to cross said bridge with its locomotives and cars, upon the payment of toll and upon the terms in this act expressed.' Section 8. 'The said company shall not have the power to acquire more than one right of way from any depot in Covington to its bridge and shall obtain no per-mit or privilege from the city council of Covington for such right of way without first having given at least one week's notice of its intention to make application therefor, which notice shall be in writing and be served on the city clerk of said city, and said corporation shall also cause said no-tice to be published in some newspaper circulating in Cov-ington at least seven days before the making of such appli-cation.' Section 10. The corporation was also authorized by section 6 of the charter to acquire, either by purchase or assignment, such right of way as any other company then possessed or held over or across any streets or blocks of

ground in Covington. The only purchase it made was from the Kentucky Central Railroad, as above stated; and, as this was only a right of way for a single track, authority to construct and maintain the double tracks in question must depend upon a compliance on its part with the provisions above quoted from its charter. It was only authorized by the charter to construct its track within such territorial limits as the city council of the city should prescribe. Section 4. It had no power to acquire more than one right of way from any depot to its bridge, and could obtain no permit or privilege from the council without first giving a week's notice by service on the clerk, and publication in a newspaper circulating in the city. Section 10. The record shows that at a meeting of the council on April 22, 1886, the bridge company presented a paper informing the council that it had located the approaches to its bridge from a certain square, running thence northwardly to the Ohio river, and requesting the council to approve the selection; the paper stating that due notice of the application had been given to the city clerk and by publication as required by law. The council thereupon referred the matter to its committee on railroads and bridges, to report, by ordinance or otherwise, when the company presented more specific location of their route. This, so far as the record shows, was never done, and no action was ever taken by the council on the application. The record also shows that at the same meeting of the council, on April 22, 1886, the Kentucky Central Railroad reported to the council its location of its right of way under the ordinance of October 22, 1885, along the route now occupied by the tracks in controversy. The record further shows a prolonged struggle between the city authorities and the railroad companies about their rights of way, and on July 29, 1886, a majority and minor-

ity report were presented in regard to the granting of the
right of way to the bridge company, but no action appears
to have been taken on either report.   After this the Ken-
tucky Central deeded to the bridge company its right of
way, and it is hard to escape the conclusion that the bridge
company, to avoid the terms sought to be imposed upon
it by the city, or for some other reasons, ceased to prose-
cute its application to the council, and undertook to get
along under its purchase from the Kentucky Central.   At
least, the presumption must be, as it was only authorized
to acquire one right of way, and it did not follow up its
application to the council, that this application was aban-
doned.   The purpose of requiring notice to be given of
the application was that those interested might resist it
before the council, and, when this resistance was made
with such effect that no action was taken on the applica-
tion, the only reasonable conclusion is that the corporation
made some other arrangement.   It is also shown in the rec-
ord that on December 22, 1886, an ordinance was passed
allowing the Covington Short Route & Transfer Company
to build a line from Licking river to the Kentucky Central
track, and that in the year 1889 several ordinances were
passed requiring the erection of safety gates and the keep-
ing of flagmen at different points along the tracks in con-
troversy.   It is contended for appellants that the council,
in doing this, only protected the people of the city, and
that such ordinances were not grants of right of way,
but only police regulations to prevent the trains from run-
ning over people.   However this may be, we do not think
a grant by implication or acquiescence could be properly
made by the city council under section 10 of the charter
above quoted, for it contemplates that the persons interest-
ed shall have notice of the application, and an opportunity

to resist it. To allow a grant to arise from the acqui-
escence of the council, without notice to those interested,
as provided by the statute, would be to defeat its entire
purpose.

"We are therefore of opinion that the construction and
operation of the double tracks in front of appellants' prop-
erty was not under regular legislative and municipal au-
thority. While there was authority to construct and op-
erate a single track, a double track, running necessarily
so close to the property, was a much more grievous burden;
and we do not think the statute of limitation should bar
any part of the injury done, for the reason that it is an
entirety, and not separable. It would mean that after five
years the city authorities and the persons interested, hav-
ing acquiesced in the construction of the railroad, can not
enjoin its operation or require its removal. Appellees,
after the expenditures made by them, must be allowed to
maintain and operate their road, but if, in so doing, they
take the property of appellants, they must make them a fair
compensation for the injury done. The road can not now
be treated as an illegal structure, or its operation as a
nuisance. All we hold is that limitation of five years does
not protect appellees from liability for injury done appel-
lants, as their road was not constructed under proper mun-
icipal authority."

The opinion so well states the facts in the case, the va-
rious legislative enactments, the proceedings of the com-
mon council of the city of Covington, and the conclusion
as to the application of the doctrine of the Orr case, that
it is incorporated in this opinion. The court recedes only
from that part of the opinion where it is said, "We do not
think the statute of limitation should bar any part of the
injury done, for the reason that it is an entirety, and not

separable." Under the doctrine of the Orr case, the five-year statute of limitation would have barred the appellants' cause of action, had the appellees constructed only a single track, because it was done under legislative and municipal authority. The appellees did not have municipal authority to construct the additional track. The mere fact that it was constructed at the same time that the authorized one was could not make it a lawfully constructed track. It was as much an additional servitude upon the street, and injury to the property of appellants, as it would have been, had it been constructed anterior or subsequent to the construction of the authorized track. The effect upon the rights of the appellants was just the same whether the authorized track was constructed prior to, at the same time, or subsequent to the construction of the authorized one. The time of the construction could not affect in any way the application of the statute of limitations to the rights of appellants. When the authorized track was constructed, under the Orr case, the five-year statute of limitation began to run. When the unauthorized one was constructed, and damaged the property of the appellants, it was an unlawful taking of their property, and the fifteen-year statute of limitation applies. As the appellee had the right to maintain one track under legislative and municipal authority, did it forfeit the right to have the five-year statute of limitation apply to appellants' cause of action for injury and damages resulting from its prudent operation? Upon reconsideration, we have concluded that it has not lost it. Its unauthorized act could not change the application of the law of limitation to a cause of action existing independent of such act. It could no more do so, than the doing of the lawful act could change the application of another statute of limitation to the cause of action growing out of the unau-

thorized act. The construction of two tracks created an additional servitude upon the narrow street, and the operation of trains over both of them necessarily added to the damages to appellants' property. While the construction and operation of the two tracks makes it more difficult to determine the damage resulting to the appellants, than it would if only one had been constructed and operated, still that difficulty, which has been created by appellees, should not be interposed as a barrier to appellants' right to have redress for their wrongs. The damage for which they are entitled to recover from appellees is for constructing and maintaining two tracks instead of one. Whatever damages the appellants sustained by reason of the construction and operation of two tracks, which they would not have sustained by the construction and prudent operation of one track, is the amount of damages appellants are entitled to recover. This we believe to be the correct rule for the measurement of the damages they have sustained, and for which their right to recover is not barred by the statute of limitation.

The judgment is reversed for proceedings consistent with this opinion.

Judge O'Rear dissenting:

This action was brought to recover damages alleged to have resulted from the operation of railroad trains over appellee's tracks at the intersection of Lewis and Craig streets, in Covington, Ky. The double tracks of appellee's road pass diagonally across the intersection of Lewis and Craig streets, and over these two streets all railroad trains of appellee's road moving between Covington, Ky., and Cincinnati, Ohio, pass. Appellants' property is situated at the southeast corner of Lewis and Craig streets, fronting thirty-five feet on Lewis street, and extending back seventy-

five feet on Craig street.   Upon this lot is a three-story
brick house at the corner, and a two-story brick house on
the rear of the lot, fronting on Craig street.   These tracks
were constructed across the intersection of Lewis and Craig
streets in the year 1889, since when they have been con-
stantly used in substantially the same condition as they
were when first built.   At the time of their construction
the property involved in this litigation was owned by Frank
Klosterman, the husband of one of the appellants, and the
father of the others.   He died February 10, 1892, and this
suit was brought December 5, 1895, by his widow, as ex-
ecutrix, and by his devisees, for injuries to the property
arising from the operation of trains on and over said tracks;
that is, from the noise, smoke, cinders, and vibrations aris-
ing from the operation of the cars.   The petition does not
allege that appellee's operation of its railroad trains was
negligent or unusual, or other than the usual and customary
service.   Nor does the petition proceed upon the ground
that by the construction of appellee's railroad tracks, and
the operation of its trains, there has been an interference
with appellants' right of egress and ingress from and to
their said property.   It is the contention of appellants, as
set out in this petition, and made here in argument, that
appellee's occupancy of the street in question, to the extent
of one of its tracks, was without legislative or municipal
authority, and it was therefore a continuing nuisance for
appellee to operate on such tracks its railroad trains and
locomotives.   It becomes important, therefore, to determine
whether appellee's occupation of the streets in question by
its double track of railroad was or has become authorized.
If it was, this action is confessedly barred, under the prin-
ciples announced in Railroad Co. v. Orr, 91 Ky., 114, 12 R.,
756, 15 S. W., 8.   The tracks were built by appellee, the

Covington & Cincinnati Elevated Railroad & Transfer &
Bridge Company, hereinafter called the "Bridge Company."
This company was incorporated by an act of the Legislature
approved February 9, 1886. Prior thereto the Kentucky
Central Railroad Company had acquired certain corporate
rights and franchises, including that of operating and main-
taining a line of railroad into the city of Covington,. and
on to the Ohio river. The bridge company was authorized
to construct a railway and highway bridge across the Ohio
river between the cities of Cincinnati and Covington, and
to operate railroad trains thereon. It was authorized to
construct approaches to the bridge on the Covington side,
and to build and maintain connection with the railroad
tracks of such other roads as might then be in Covington,
or might thereafter be constructed to Covington. At that
time, so far as the record discloses, there was but one road
in Covington, to-wit, the Kentucky Central. The eighth
section of the act of incorporation is as follows: "The said
company shall construct and maintain tracks connecting its
bridge with the Kentucky Central Railroad in such manner
as to enable other railroads to connect these lines of rail-
way with said tracks approaching said bridge. Connections
made by any other railroad with such connecting tracks
shall be so made as to permit other railroads to connect
therewith; and any railroad now existing or to be hereafter
constructed within the city of Covington shall have the right
to connect its railway with said connecting tracks, and
shall have the right to use the same for the purpose of and
to cross said bridge with its locomotives and cars upon the
payment of tolls and upon the terms in this act expressed "
Section 10 is as follows: "The said company shall not have
the power to acquire more than one right of way from any
depot in Covington to its bridge, and shall obtain no per-

mit or privilege from the city council of Covington for such right of way without first having given at least one week's notice of its intention to make application therefor, which notice shall be in writing, and be served on the city clerk of said city, and said corporation shall also cause said notice to be published in some newspaper circulating in Covington at least seven days before the making of such application, but nothing herein shall be construed to prevent said company from acquiring a right of way by assignment as provided in section 6 hereof." Under this charter, appellee bridge company did construct the bridge contemplated by the act, and did build approaches thereto on the Kentucky side of the river, and did connect its tracks with the tracks of the Kentucky Central Railroad Company. The Maysville & Big Sandy Railroad Company, now operated and controlled by the Chesapeake & Ohio Railway Company, had constructed a railroad into the city of Covington; and the track was built on the same roadway, and parallel to the other track connecting this road with the bridge company's road. In other words, the bridge company has built tracks from its bridge connecting it over one roadway with two different railroads operating in Covington, Ky., which were, under the charter of appellee bridge company, entitled to transfer privileges over said bridge into Cincinnati.

For appellants it is argued that the authority to appellee to construct a double track road is not shown in this case, because there was not a compliance with section 10 of appellee bridge company's charter, above quoted, in which it was required to give notice in writing, to be served on the city clerk and published in some newspaper circulated in Covington for at least seven days before the making of such application for roadway. Whether such notice was given is not shown. It is not argued or shown that a spe-

cific grant of roadway to the bridge company was made by the city council. It seems from the record that the bridge company's connecting tracks were in fact built by the Chesapeake & Ohio Railway Company, and are operated by it, under the management and charter of the bridge company. The record discloses abundant instances, as early as 1889, when the Chesapeake & Ohio Railway Company was building, or shortly after it had completed, the line of the road in question, that the city council was negotiating with that company as to the manner of making certain grades on certain of the streets over which it crossed in the construction of such approach to the bridge, and wherein the railroad company was required to, and did, agree to bear the expenses of regrading certain parts of such streets, and of constructing sewers, etc., and of maintaining gates across certain streets, including Lewis and Craig streets crossing. Was this equivalent to a grant by the municipal corporation of a right of way across the street in question? In this State the Legislature might have authorized the construction of a railroad across or along the streets of a town or city without the consent of the latter. Railroad Co. v. Orr, supra. The legislative authority to appellee to construct the railroad in question was undoubtedly conferred. The only thing remaining was the assent of the municipal corporation of the city of Covington. The manner of giving this assent (that is, whether it should be by deed or by ordinance) is not stipulated. That the municipality had notice of appellee's purpose to construct the railroad in question, and as now operated, is evident. That it raised some objections to the exercise of this purpose in certain particulars, which were finally adjusted to its satisfaction, is also shown. That the railroad company, evidently relying upon these facts, in connection with the charter of the

bridge company, built the tracks upon the route in litigation, with the knowledge and assent of the city, is apparent. Under these circumstances, would the city be permitted to say to the railroad company that it had not complied with the prerequisites named in the statute, and therefore it must leave the streets? We think not. It would be held estopped by its conduct, and appellee's reliance thereon, to the extent that it constructed an expensive railway over the streets in question. Appellee having the right to construct its "railroad tracks" over such streets as the city might permit, and the city of Covington having acquiesced in the construction of the tracks, for the purposes and to the extent authorized by appellee's charter, it must be held to be bound by its conduct in the premises as fully and to every extent as if such authority had been granted by ordinance duly passed. There is no good reason why the municipality should not be held to the same standard of honesty in such matters, when applying to it an estoppel, as other persons would be. In Kneeland v. Gilman, 24 Wis., 39, cited and adopted as basis of text in Herm. Estop., 1363, it was said: "But of late years, much more than formerly, the doctrine of estoppel, most wholesome and just in its operation when properly applied, has been extended to these municipal corporations, so as to bind and conclude them by their own acts and acquiescence, and the act and acquiescence of their officers, whenever an estoppel would exist in the case of natural persons. It is now well settled that, as to matters within the scope of their powers and the powers of their officers, such corporations may be estopped upon the same principles and under the same circumstances as natural persons."

We conclude, therefore, that appellees have acquired the right to build the double-track road at the places now oc-

cupied, and in question in this suit. It therefore follows that applying the doctrine of the cases of Railroad Co. v. Orr, supra, and Roulston v. Railroad Co. (21 R., 7) 54 S. W., 2, the statutory bar of five years pleaded by appellees in this case against appellants' right of recovery was applicable, and that the circuit court rightfully gave a peremptory instruction based thereon. The majority opinion proceeds upon the theory that although appellees had a perfect right to build a single-track railway over the route in question, yet by building an additional track they have become liable for the damages resulting from all operation of trains over it—the additional track—but not for the smoke, noise, etc., caused by the operation of the trains on the first track. The damages for which appellants sue are not really due to the existence of the two tracks, but the existence of noise, smoke, cinders and jarring caused by the trains. These conditions would exist just the same whether these trains passed over one or two tracks, it not being shown in the record that both tracks were ever used at this point at the same moment.

Whole court sitting.

Judges Burnam and Du Relle concur with Judge O'Rear.

Petition for rehearing by appellee overruled.