### Payne, Agent v. Smith.

### Payne, Agent v. Lanham.

(Decided February 6, 1923.)

### Appeals from Ohio Circuit Court.

1. Waters and Water Courses—Right of Action for Overflow.—One who buys a tract of land near which is a railroad embankment permanent in its nature, which causes the water of the creek to be cast upon and over the said land, cannot maintain an action for such overflow, for it is presumed he took the land in its diminished condition subject to the overflow.

2. Waters and Water Courses—Right of Action for Overflow.—In such cases only the original owner can maintain such action.

3. Waters and Water Courses—Right of Action for Overflow.—An adjacent landowner cannot maintain recurring actions against a railroad company for flooding his land where the alleged cause of the overflow is a permanent fill or embankment on which the railroad maintains its tracks, but the landowner must sue to recover permanent damages once for all.

B. D. WARFIELD, ERNEST WOODWARD and A. D. KIRK for appellant.

W. H. BARNES and C. E. SMITH for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Reversing.

These two causes, and a third one not appealed, were tried in the Ohio circuit court, Lanham being awarded damages in the sum of $300.00, Smith damages in the sum of $250.00, and Brown, etc., the sum of $100.00, against the railroad company. The railroad company prays an appeal from the judgment in favor of Lanham and Smith. Both Smith anl Lanham own tracts of land in a narrow

valley in Ohio county, across which the Louisville &
Nashville Railroad Company maintains its tracks upon'
an embankment or fill. These suits were brought separ-
ately against the railroad company for the recovery of
damages for the loss to each of the plaintiffs of a crop of
growing corn on their respective lands in the year 1918,
occasioned, as it is alleged, through the negligence of the
company in constucting its embankment and in failing to
have apertures in its embankment large enough to allow
the water to flow through unobstructed, and in failing to
keep such apertures as it had free from obstruction by
silt, thus casting water upon the fields in which the corn
was growing and damaging and destroying it.

The railroad company traversed the material allega-
tions of the petitions in each of the cases, and by a
second paragraph pleaded that the embankments sup-
porting its track and the culverts and openings therein
of which the plaintiffs complain were each and all per-
manent structures for the use of defendant, a common
carrier of freight and passengers, erected more than
five years before the alleged damage and that said em-
bankment, culverts and openings were constructed pur-
suant to and in conformity with the judgment, experi-
ence and skill of highly qualified civil engineers and per-
sons selected for that purpose and in pursuance to and
in conformity with the natural drainage, water courses
and surface condition of all the lands in the petitions
mentioned; that the lands of the several plaintiffs were
low, flat and marshy and that this low, flat and marshy
condition alone brought about the overflow of said lands
and the destruction of the crops, if such there were.
Further pleading the company in the third paragraph
averred that the overflow, if any there were on the lands
of the several plaintiffs, was occasioned by excessive,
unusual and unprecedented rainfall such as could not
have been reasonably foreseen or anticipated in the
building and constructing of the embankment, openings,
culverts and structures of the said company, and was
not due to any negligent construction of the embankment
and culverts or to the existence of the same. Issue being
joined the cases were all submitted to one jury, with the
result above stated.

The railroad company relies upon several grounds
for a reversal of the judgments. Without reviewing the
evidence it will be sufficient to state that it tends to show
that in July and again in August, 1918, after the crops

of corn on appellee Lanham's land and on appellee Smith's land had been laid-by, rain came which filled the creek and covered the grounds and was later backed-up over the said corn crops to a depth of as much as three feet in some places, and that several acres of said growing corn were submerged and greatly damaged; that the lands were flat bottom lands which frequently overflowed; that the channel of the creek was not deep and its banks were covered with bushes and trees and that frequently debris lodged upon and against the trees and banks, obstructing the flow of the water, and that at the time of the said flooding of the growing crops there was one or more such obstructions in the creek above the railroad property; that there was another one about the fence between the railroad property and the lands of Lanham; that the opening through the railroad company's embankment was about 140 feet wide and that there was a ditch along the upper side of the embankment next to the lands of Lanham and Smith which carried the water towards and into the creek, and that the lands were so level and flat that the water drained off very slowly; that the lands from the earliest recollection of persons in that vicinity had been accustomed to overflow at intervals; and that the crops were not entirely destroyed but were merely damaged.    It is further shown that the railroad embankment was a permanent one, made of dirt and rock about twenty feet across the top and about eight feet high extending across the valley except a trestle at the creek about 140 feet long; that the said embankment had been in the same condition for more than five years next before the alleged injury and that the embankment had been in the same condition for more than five years next before appellee Smith purchased his land and that he knew of this condition and the fact that the lands had been overflowed for at least five years next before the injury to the crops for which he sues.

With these facts in mind it is apparent that Smith was not entitled to recover at all, for he purchased his lands several years before the flooding of the grounds now complained of, with full knowledge of the existence and condition of the embankment maintained by the railroad and the further fact that the said lands frequently overflowed.    In such case no recovery is allowed because it is presumed that one purchasing such land with such knowledge takes it in its then condition subject to all the

inconveniences and overflows occurring from water of which he knew at the time he purchased the same.

In the case of the City of Richmond v. Gentry, 136 Ky. 322, in considering this question, we said:

"Obviously, if the structure is permanent and the damages recoverable in one gross sum, covering all time, that should end the matter. To allow additional recoveries of the same nature would be to mulct the defendant a number of times for the same wrong, and compel it to make compensation repeatedly for one taking of the property. It is equally clear that the person from whom the property was taken, its owner at the time of the permanent injury, is the one to be compensated. If he sells the property subsequently, he sells it in its impaired state. The purchaser buys it under the existing conditions which detract from its value and fixes the consideration accordingly. L. & N. R. R. Co. v. Lambert, 33 Ky. Law Rep. 199 If he were allowed then to recover the diminished value he would get something he had not bought It is upon these considerations that are rested the rules of compensation above outlined."

To the same effect is the case of Pence v. City of Danville, 147 Ky. 685, in considering this question we said:

"The evidence shows that the improvement on the dam is of a permanent nature and was completed a year or more before appellant became the owner of the land to which the injury is alleged to have been caused by the overflow. Any damage that resulted to it, therefore, by reason of this increased height of the dam, was caused while the title thereto remained in her brother-in-law, and any cause of action on account thereof was in him, and his failure to assert such right as he may have had does not have the effect of transferring to his vendee, the appellant, the right to sue therefor. The injury had been sustained when she purchased, she took the land in its injured or damaged condition, and it must be presumed that the damage to the farm by reason of the overflow was taken into consideration and accounted for to her in fixing the price which she was required to pay."

Supporting this same doctrine is the case of Ft. Lyon Canal Co. v. Bennett, 156 Pac., p. 604 (California), where the court in considering a similar question has the following to say:

"Whatever right plaintiffs may have acquired in the land, if any, was admitted by the pleading to have been

acquired long after the structure was built and had been in use in connection with the land. Under such conditions repeated actions year after year by subsequent purchasers, lessees, or croppers for the loss of the crops cannot be maintained. Such subsequent owners or lessees would take the land subject to the permanent conditions of the laterals as they existed when their rights were acquired.''

That court cites in support of the doctrine many cases from different courts, including some from this court. See also L. & N. R. R. Co. v. Craft, 192 Ky. 315; City of Ludlow v. Broderick, 181 Ky. 123; Roberts v. Northern Pacific Ry. Co. (U. S. Supreme Court), 138 U. S. Supreme Court Reports, p. 1.

Appellee Lanham's recovery, if any be allowed him, must be for a permanent injury and not for a temporary or recurring injury. The embankment is in its nature a permanent one, and the court should have held as a matter of law that the railroad embankment was permanent, and have submitted to the jury only the question of permanent injury so that the one action would have settled for all time the question of damages to the said lands. The defendant should have been permitted to prove the value of the said lands in their present condition as well as their value unobstructed by the embankment. This whole subject has been recently treated by this court in two cases—L. & N. R. R. Co. v. Bennett, 196 Ky. 679, and Elkhorn and Beaver Valley R. R. Co. v. Martin, 195 Ky. 20—very similar in facts to the ones under consideration, and the rules laid down in the two said cases are equally applicable to the facts of these cases and need not be again stated. The plaintiffs were not entitled to a recovery for their crops merely, where the railroad company by its pleading seasonably asks the court to submit the question of permanent injury and damage to the said lands to the jury. The removal of the embankment upon which the railroad tracks are maintained across the valley would, according to the estimate of the company, cost about $85,000.00. This, it is asserted and reasonably appears is much more than the entire value of the farms of both plaintiffs, only a small part of which, if any, is caused to overflow by the said embankment. It follows, therefore, that the plaintiffs were not entitled to have the embankment removed or the culverts and openings enlarged where the expense of doing so was out of proportion to the value of the prop-

erty to be benefited by such removal or change. There remains, therefore, but one equitable thing to be done, and that is to assess the permanent damages to the land of the plaintiffs occasioned by the embankment casting water over the said lands, if any, once for all. No other question should have been submitted to the jury.

The instructions given by the court as to the measure of damages to which the plaintiffs were entitled, if any, were incorrect. The court will upon another trial when permanent injury to the lands is submitted to the jury, instruct the jury in case it finds for the plaintiffs to award such sum in damages as it may believe from the evidence was the difference, if any, in the market value of the lands in their condition at the time of the commencement of the actions with the embankment in place, and its market value at such time without such embankment. L. H. & St. L. Ry. Co. v. Roberts, 144 Ky. 820; L. & N. R. R. Co. v. Whitsell, 125 Ky. 433.

As the facts of these cases are so like the facts of the case of L. & N. R. R. Co. v. Bennett, *supra,* we deem it wholly unnecessary to again discuss the rules and principles in that opinion set out and affirmed. The trial court will have advantage of that opinion in a retrial of the case if the facts then developed make the principles therein recognized applicable.

For the reasons indicated the judgments in each of the appealed cases are reversed for new trial.

Judgments reversed.