## Louisville Hydro-Electric Co. v. Coburn.

(Decided Nov. 16, 1937.)

WILSON W. WYATT and PETER, HEYBURN, MARSHALL & WYATT for appellant.

B. M. HARWOOD, R. F. PEAK, J. W. FITZPATRICK, DONALD JUSTICE and L. D. GREENE for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee, Edward Coburn, owns a lot fronting 63½ feet on Tarascon avenue and extending back 126 feet along Plum street in a section of Louisville known as Shippingport. It is located near the south bank of the Ohio river and 300 feet east and up the river from an embankment constructed in 1926 and 1927 by the appellant, Louisville Hydro-Electric Company. The embankment is about 2,500 feet in length, 100 to 120 feet in width at the bottom, 16 to 20 feet in width at the top, and 20 to 25 feet in height, and extends from appellant's power plant in the Ohio river to the Louisville and Portland canal. Upon the embankment is a railroad track over which heavy machinery is hauled to and from the power plant. The embankment affords means of ingress and egress to and from the plant during periods of high water in the Ohio river, and is in fact an extension of dam No. 41, erected by the United States government in 1927, which extends from the Indiana shore to the point in the river where appellant's power plant is located, which is about 650 feet from the south bank of the river at Shippingport.

The power plant and embankment were constructed under a license granted to the appellant by the Federal Power Commission November 11, 1925. On April 3, 1934, appellee brought this action against the Louisville Hydro-Electric Company to recover damages alleged to have been caused by the unlawful and negligent construction of the embankment. The petition, as amended, alleges, in substance, that the embankment prevents drainage of the natural surface waters from appellee's land, impounds the backwater of the Ohio river in still and stagnant pools on his lot for long periods of time, and creates pools which prevent access to his property from either Tarascon avenue or Plum street; that the embankment was negligently constructed in that no provision was made for the escape of accumulated waters through it; that it is not a permanent structure, but was erected solely for hauling heavy material over it for use in the construction of the power plant, and has been abandoned; that the alleged negligent construction could have been remedied at a reason-

able cost by removing part of the embankment or tunneling under it to permit the escape of accumulated waters; and that the power plant and dam were unlawfully constructed in that appellant failed to comply with sections 1599b-1 and 1599b-2 and 1599c-1 and 1599c-2, Kentucky Statutes. The averments of the petition and amended petitions were traversed, and the 5-year statute of limitations (Ky. Stats., sec. 2515) was pleaded. The appellant alleged affirmatively that a large part of the embankment was completed in 1926, and that the power plant and dam were completed in 1927; that the plans and specifications for the power plant and dam and the completed work were licensed and approved by the Federal Power Commission; that they were carefully and prudently constructed; that the embankment is a permanent structure and is requisite to the operation of the plant and an integral part of the power project; that the railroad track along the top of the embankment is regularly maintained and is a means of ingress and egress to and from the plant; that the embankment is the only means of ingress or egress in times of high water, and both it and the power plant were built in accordance with proper and recognized engineering plans and methods; that drains or other openings or tunnels through the embankment could not be constructed without seriously imperiling the embankment; and that they would be of no value whatsoever to appellee, and that the embankment cannot be removed, replaced, repaired, or rebuilt except at an excessive and exorbitant expense. After the issues were completed, the case was tried before a jury which returned a verdict for the plaintiff in the sum of $500, and, from the judgment entered thereon, the Louisville Hydro-Electric Company has appealed.

The uncontradicted evidence shows that the embankment does not prevent drainage of the natural surface waters from appellee's land and does not create pools which prevent access to his property through Tarascon avenue or Plum street. The evidence does show, however, that the water above the embankment in Shippingport is 18 to 23 inches deeper in times of flood than it is below the embankment. Appellee's lot is low lying land, and is frequently flooded. During extraordinary floods in the Ohio river, the buildings on the lot are completely under water. The slight additional depth of water above the embankment in times of

628

flood adds little to the inconvenience and loss suffered by property owners, but to that extent it is an additional burden on the property, caused by the embankment. Appellee undertook to show that the embankment was a temporary structure intended for use only during the construction of the power plant, but in this effort he utterly failed, since the uncontroverted evidence shows that the embankment and the railroad tracks thereon have been used continuously since the completion of the plant, and are necessary to its proper and efficient operation. They were completed after the powerhouse, and were not used in connection with the building of the power plant. The evidence likewise fails to show that the embankment was negligently constructed as claimed by appellee. The claim that the dam or embankment was negligently constructed rests upon the theory that culverts or openings through which the water could escape should have been constructed. The appellee alone testified to that effect. His testimony was clearly incompetent since the matter was a technical engineering problem, and only one possessing expert knowledge of the subject could express an intelligent opinion as to the proper method of constructing the dam. It is conceded that he did not possess such knowledge. A number of competent and experienced engineers testified that the embankment and power plant were constructed in accordance with approved engineering practices, and that even a great number of culverts or openings through the dam would not appreciably reduce the height of the water in Shippingport in times of flood, because of the large volume of water in the Ohio river at such times. Mr. S. J. Stallings, an engineer introduced by appellee, corroborated appellant's expert witnesses on these points. Even if it be conceded that the appellee in constructing the dam negligently failed to construct openings therein sufficient to provide for the escape of flood waters through or under the embankment, yet it has shown without contradiction that the expense of constructing such openings now would be excessive and disproportionate to the damage done. That being true, there must be a recovery once for all. City of Covington v. McKinney, 263 Ky. 131, 92 S. W. (2d) 1; Louisville & Nashville R. Co. v. Bennett, 207 Ky. 776, 271 S. W. 71; Payne v. Smith, 198 Ky. 564, 249 S. W. 995; Louisville & N. R. Co. v. Bennett, 196 Ky. 679, 246 S. W. 121.

The rule as to compensating one injured by an overflow of his land caused by a permanent structure erected by a public service corporation, although the structure is negligently built, is thus stated in Honaker v. Chesapeake & Ohio Railway Company, 209 Ky. 576, 273 S. W. 81, 82:

> "Although the structure be unlawfully or negligently built, yet, if it is intended to be permanent, and it cannot be repaired or remedied so as to avoid recurring injuries at a reasonable expense, or at an expense commensurate with the damages done by reason of its existence, then there must be a recovery once for all."

The court properly instructed the jury, as a matter of law, that the embankment was a permanent structure. The appellee testified that the first injury to his property caused by the presence of the embankment occurred in the spring of 1927. That being true, the 5-year statute of limitations applied, and the court erred in overruling appellant's motion for a directed verdict in its favor. Taylor Coal Co. v. Board of Drainage Commissioners of Ohio County, 189 Ky. 793, 225 S. W. 368; Board of Park Commissioners of the City of Louisville v. Donahue, 140 Ky. 502, 131 S. W. 285; City of Richmond v. Gentry, 136 Ky. 319, 124 S. W. 337, 136 Am. St. Rep. 255. In City of Madisonville v. Hardman (Ky.) 92 S. W. 930, 931, 29 Ky. Law Rep. 253, it was said:

> "The rule in this state is that, where the injury or nuisance complained of is permanent, the measure of damage is the depreciation in the market value of the property, and in this class of cases limitation begins to run from the completion of the improvement or the structure, whatever it may be, that caused the injury, and the action is barred in five years from that time, and all the damages for past, present, and future injury must be recovered in one action."

It is contended by appellee that appellant failed to comply with the requirements of sections 1599b-1 and 1599b-2 and 1599c-1 and 1599c-2, and that the construction of the power plant and dam therefore was unlawful and that the 15-year (Ky. Stats., sec. 2505) and not the 5-year statute of limitations applies. Klosterman, etc., v. Chesapeake & Ohio Railway Company, 56 S. W.

820, 22 Ky. Law Rep. 192, is relied upon. In that case the city of Covington granted to the railroad company permission to construct a railroad track in Washington street, but the grant was expressly limited to a right of way for a single track. The railroad's charter prohibited it from obtaining from the city of Covington a permit or privilege for more than one right of way unless certain steps therein enumerated were first taken by it. It obtained a permit from the city council to construct a single track in Washington street, and many years after this track had been constructed and in operation it constructed a second track without obtaining a permit from the city council and without complying with its charter provisions. It was held in the Klosterman Case that the construction of the second track was unlawful, and therefore that as to it the 5-year statute of limitations did not apply. See Klosterman v. Chesapeake & Ohio Railway Company, 114 Ky. 426, 71 S. W. 6, 24 Ky. Law Rep. 1183. In the case before us the failure of appellant to follow the procedure prescribed by sections 1599b-1 and 1599b-2 and 1599c-1 and 1599c-2 did not render the construction of the power plant and dam unlawful. It had obtained from the proper authorities a permit to erect them.

It is argued that appellant should have executed the bond required by section 1599b-1 before constructing its power station and dam, but that bond is solely for the purpose of indemnifying property owners for actual damages sustained on account of surveys and examinations made for the proposed dam and power station. Appellant did not enter upon appellee's land to make surveys and examinations, and the execution of the bond referred to in this section of the Statutes was not a condition precedent to its right to do the construction work. Section 1599c-1 prescribes the procedure for obtaining a permit from proper authorities to construct transmission lines and appliances along and across public roads and highways. This section has no application to the present case.

Article 10 of the license issued to the appellant by the Federal Power Commission reads:

"The Licensee shall be liable for all damages occasioned to the property of others by the construction, maintenance or operation of said project works, or of the works appurtenant or accessory thereto, and

in no event shall the United States be liable therefor.''

It is insisted by appellee that this provision was inserted in the contract for the benefit of all persons who might be damaged by the construction and operation of the power plant, and that therefore the 15-year statute of limitations applies. This clause was inserted in the license for the sole purpose of protecting the United States. It merely provides that, as between appellant and the United States, the former assumes all liability for damages legally enforceable. It does not create a right in favor of third persons. In the recently decided case of Humpich's Trustees v. Louisville Gas & Electric Company, Inc., 269 Ky. 558, 108 S. W. (2d) 509, 511, we said, concerning this same article 10:

"Appellants also rely on the provisions of article 10 of the license which provides in effect that the licensee shall be liable for damages occasioned to others by the construction, maintenance, or operation of the plant and that in no event shall the United States be liable therefor. But it is manifest that the United States could not by contract evade liability as to third parties nor as to third parties could it impose liability on appellee where none existed. Furthermore, it is to be doubted if the contracting parties had in mind damages of this character when this provision was inserted in the license."

In Corrigan Transportation Company v. Sanitary District (D. C.) 125 F. 611, 613, the court, in construing a similar clause in a permit granted by the Secretary of War, said:

"The clause of the final permit above quoted requiring the respondent to assume all responsibility for damages in the premises cannot be construed as meaning more than that, that whatever damages may legally arise are to be assumed by respondent. It does not create any liability, but would seem to have been inserted as an extra precaution. The Secretary of War could neither create nor wipe out a legal cause of action. The liability referred to is a 'legal liability,' springing out of the acts of respondent, existing, if at all, entirely independent of said clause."

In affirming the judgment of the District Court, the Circuit Court of Appeals for the Seventh Circuit, in Corrigan Transit Company v. Sanitary District of Chicago, 137 F. 851, 855, said:

"This was an indemnifying contract, purely between the parties, and not an undertaking by defendant to pay to outsiders damages for which otherwise they would have no cause of action. Defendant's obligation was to pay or fight all claims for damages on account of the current and save the federal government harmless. No elaboration, we believe, can make this conclusion more apparent than does a mere reading of the permit."

To the same effect is Alabama Power Co. v. Smith, 229 Ala. 105, 155 So. 601.

It follows from what has been said that the trial court erred in overruling appellant's motion for a peremptory instruction.

Judgment is reversed, for further proceedings consistent herewith.