## Tandy v. City of Hopkinsville.

(Decided October 13, 1914.)

### Appeal from Christian Circuit Court.

1.  Municipal Corporations—Destruction of Property by a Mob.—
    Under section 8 of the Kentucky Statutes, a municipal corporation
    is liable in damages for injury to property by a mob if the city
    authorities have the ability to prevent the damage and have
    notice or good reason to believe that a mob will destroy or at-
    tempt to destroy the property; but no liability attaches unless
    the city authorities have notice or good reason to believe that a
    riotous assemblage is about to take place, or, after it has taken
    place, have notice in time to prevent the injury.
2.  Municipal Corporations—Destruction of Property by a Mob.—The
    question of notice to the city is one of fact to be determined by
    the jury from the evidence.
3.  Municipal Corporations—Destruction of Property by a Mob—City
    Not Liable if Owner Contributes to Action of Mob.—Under the
    statute the city is not liable to the owner of the property who has
    contributed towards exciting or inflaming the riot, but before this
    provision of the statute can be invoked against the owner, it must
    appear that he did something to bring himself within its scope.
4.  Municipal Corporations—Destruction of Property By a Mob.—
    Duty of Citizens in Respect to Protecting Property.—The citizen
    may employ guards to protect his property, but his failure to do
    this, although he may have reason to anticipate its destruction
    by a mob, will not excuse the city from its duty to protect the
    property of its citizens. The statute imposes upon the city a
    liability, and this liability it can escape only by performing its
    duty as described in the statute.
5.  Instructions—Erroneous Will Be Treated as Harmless if Not
    Prejudicial.—The giving of an erroneous instruction will not be
    ground for reversal unless it prejudices the substantial rights of
    the complaining party.

BREATHITT & BREATHITT and TRIMBLE & BELL for ap-
pellant.

C. H. BUSH, JOHN C. DUFFY and SOUTHALL & SON for
appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the appellant, Tandy, who
will be hereafter called the plaintiff, against the appel-
lee, the City of Hopkinsville, a city of the fourth class.

In his petition he set out that in December, 1907, he
was the owner of two large tobacco warehouses situated

within the city limits. That on and prior to December, 1907, there existed in that part of the State in which Hopkinsville was located a corporation known as the Dark Tobacco District Association, the object of which was to control the price of dark tobacco by getting producers and dealers to join the association. That a number of producers and dealers refused to become members, and in order to force them to do so, there was organized a secret society known as the "Night Riders," the purpose of this society being to compel by force and intimidation such persons as refused to join the association to do so. That the Night Riders committed a number of depredations in an effort to coerce and intimidate and for some months prior to December, 1907, had been preparing and threatening to make a raid on the City of Hopkinsville, in which a large tobacco business was conducted, for the purpose of burning and destroying warehouses and other property in the city occupied and owned by dealers in tobacco who had refused to join the association. That the unlawful purpose of this band to destroy property in the city was well known to the city authorities prior to December, but that no effort was made by them to protect the threatened property. That on the night of December 6, 1907, some two-hundred or more of the Night Riders made a raid on Hopkinsville, and with force and arms set fire to and destroyed warehouses owned by the plaintiff. That the authorities of the city had the ability of themselves or with the aid of their own citizens to protect the property of this plaintiff, and that they had notice or good reason to believe that the raid was about to take place in time to have prevented the destruction of his property, but that the city authorities did nothing to protect his property and negligently permitted it to be destroyed by the raiders.

It was further averred that the plaintiff did not unlawfully contribute by word or deed toward inflaming such tumultuous and riotous assemblage, and that he did not in any way fail to do that which he reasonably could towards preventing, allaying or suppressing said tumultuous riot, and his property was destroyed without any fault on his part.

The answer of the city, excepting some admissions, was merely a denial of the averments of the petition.

On a trial of the case before a jury, there was a verdict for the city, and the plaintiff appeals.

The action was founded on section eight of the Kentucky Statutes, reading as follows: "If, within any city, any church, convent, chapel, dwelling-house, or house used or designed for the transaction of lawful business, or ship or shipyard, boat or vessel, or railroad, or property of any kind belonging to any street or other railroad company, or any article of personal property, shall be injured or destroyed, or if any property therein or thereon shall be taken away or injured by any riotous or tumultous assemblage of people, the full amount of the damages so done shall be recoverable by the person injured by action against the city if the authorities thereof have the ability of themselves or with the aid of their own citizens to prevent such damage; but no such liability shall be incurred by such city unless the authorities thereof shall have notice or good reason to believe that such riot or tumultuous assemblage was about to take place, or having taken place, shall have had notice of the same in time to prevent said injury or destruction either by their own force or by the aid of the citizens of such city. No person shall maintain such action who shall have unlawfully contributed by word or deed toward exciting or inflaming such tumult or riot, or who shall have failed to do what he reasonably could toward preventing, allaying or suppressing it."

It will be observed that under this statute a city is liable for the injury or destruction of property therein if the city has the ability, with the aid of its citizens, to prevent such injury or destruction, but that no liability attaches to the city unless the authorities shall have notice or good reason to believe that a riotous or tumultuous assemblage of people is about to take place or unless, after it has taken place, the city shall have had notice of the same in time to prevent the injury or destruction of the property.

It may be conceded that the City of Hopkinsville, with the aid of its citizens, did have ample ability to prevent the destruction of the plaintiff's property by the mob that destroyed it. It is also unnecessary that we should go into the question as to whether the city could have prevented the destruction of the property after the mob made its appearance in the city or after the city authorities had notice that the mob would immediately come or would invade the city on the night the property was destroyed, as there is no evidence in the record conducing to show that the authorities of the city or the people of

the city, after the presence of the mob in the city became known, could have done anything to prevent the destruction of the property; nor is there any evidence that the city authorities, or any of them, knew that the mob was going to invade the city on the particular night in question. So that if the city is liable at all, it is under that portion of the statute providing that "no liability shall be incurred by such city, unless the authorities thereof shall have notice or good reason to believe that such riot or tumultuous assemblage was about to take place."

Upon this issue there is some conflict in the evidence. A great many witnesses were introduced in behalf of the plaintiff and a large number testified for the city, the evidence for the plaintiff being directed to an attempt to show that the city authorities had notice or good reason to believe that the raid would take place, while the evidence for the city tended to show that the authorities did not have notice or reason to believe that it would take place.

It is, however, undisputed that a lawless band had been operating in the section of the State in which Hopkinsville is situated, for many months before the attack on the city was made. This band, composed perhaps of several bodies, at different places and in different manners, committed a great many crimes against the peace and order of society. They burned and destroyed property, whipped and beat inoffensive citizens, and threatened and intimidated scores of good people. The ostensible object of their efforts was to promote the interests of the dark tobacco association by compelling by threat and violence all persons interested in the tobacco business to become members of it or act in concert with its purposes. The enmity of this so-called band of Night Riders was especially directed against independent dealers, that is, buyers who would not identify themselves with the dark tobacco association, and who operated in competition with it; and there were in Hopkinsville a number of these independent dealers and several large warehouses owned or operated by them in which they conducted their business.

The depredations and crimes committed by these Night Riders were of course well known to the authorities of Hopkinsville for many months before the raid on Hopkinsville was made, and the evidence shows that several months before this time direct warning had been

given to the mayor of the city that an attack on Hopkinsville would be made on or within a certain time anteceding several months the time of the raid that was made. It is also shown that upon receiving this information the mayor and city authorities took prompt action to repel any raid that might be made and to protect the property it was apprehended might be injured or destroyed. But this raid did not occur and no invasion of Hopkinsville was made by the Night Riders or attempt to injure or destroy property in the city until the occasion in question.

Hopkinsville is a prosperous city with a population of some ten thousand people, and possessed of ample means and ability to protect the property of its citizens from attacks of night riders. But the evidence of the mayor, the members of the fire and police department, of the council and many other good citizens of the city who were profoundly interested in preventing the destruction of property by this unlawful band, showed that they did not believe or have good reason to believe that the City of Hopkinsville would be attacked. They believed, and we think had the right under the prevailing conditions to believe, that the size of the city, its ability to defend itself, the presence of a military company and the fact that it has formerly prepared to resist an invasion and could with short notice have been again prepared, was sufficient security against an assault from these Night Riders, whose lawless operations were principally directed against individual citizens and small towns, with the exception perhaps of the City of Princeton, a place of some two or three thousand people.

That the independent dealers in Hopkinsville did not believe that the attack would be made is also shown in a very satisfactory way by the fact that their valuable property was left practically unprotected and unguarded although the mayor of the city, notwithstanding his belief that no attack would be made, had offered to commission as many guards to protect it as these dealers might want.

The evidence further shows that the mayor and city authorities were deeply concerned in protecting the property in the city from injury or destruction by these Night Riders. On every occasion when the matter was presented, they manifested the fullest disposition to do everything necessary to preserve the city from assault and protect property from injury. There is no intima-

tion in the record that the mayor or the council or other officials of the city at any time had the slightest sympathy with the lawless purposes or operations of this band or that they were indifferent to their duty to protect the property of independent dealers. So that upon the whole case, we feel well satisfied that the evidence does not show that the city authorities had notice or good reason to believe that this assault would be made.

When the raid was made, about two o'clock in the morning, the people of the city, including the plaintiff, were, with few exceptions, at home and asleep, and no person in the city knew of the presence of this mob until it made its appearance in the city in military order and took possession of all persons from whom and places from which opposition might be expected.

Of course the people in Hopkinsville and all over that part of the State were kept in a constant state of uneasiness, and it is doubtless true that these independent dealers were apprehensive that an attempt would be made almost any time to injure or destroy their property. But the mere fact that these Night Riders were operating in that part of the State and that they had destroyed much property belonging to independent dealers and had intimidated and threatened and assaulted many people who refused to become identified with the dark tobacco association, or that people everywhere in that section felt a sense of uneasiness and fear, was not, we think, sufficient, considering the population and size and strength of defense of Hopkinsville, and its preparedness, to put the city authorities, within the meaning of the statute, on notice or furnish them good reason to believe that the attack would be made.

The question of notice that an attack such as this was about to take place, as well as the question of good reason to believe that it would, were issues of fact peculiarly within the province of the jury to decide. And we think the weight of the evidence supported the contention of the city and that the jury could not well have found, under the evidence, that the city authorities had notice or good reason to believe that this raid would be made.

The Court gave to the jury these instructions:

"No. 1. The Court says to the jury, if you should believe from the evidence in this case that the property

described in the petition and mentioned in the proof herein was set on fire and destroyed by a riotous or tumultuous assemblage of people within the City of Hopkinsville on the night of the 6th or morning of the 7th of December, 1907, and said city, through its authorities, had the ability, either by their own force, or by the aid of the citizens of said city, to have prevented the injury or destruction of said property, and failed to do so, after said city, through its authorities, had notice or good reason to believe that said riot or tumultuous assemblage was about to take place; or that said city, through its authorities, had the ability, either by their own force or by the aid of the citizens of said city, to have prevented the injury or destruction of plaintiff's property, and failed to do so, after said riot or tumultuous assemblage had taken place in said city, and said city, through its authorities, had notice of the same in time to have prevented the injury or destruction of said property, then in either event you will find for the plaintiff the damages he has sustained by reason of the destruction of said property, not exceeding in all the sum of ten thousand dollars, the amount claimed in the petition.

"No. 2. The Court further says to the jury, if you should find for the plaintiff anything under instruction number one, his measure of recovery will be the fair reasonable market value of said property at the time it was destroyed, not exceeding the sum of ten thousand dollars, the amount claimed in the petition.

"No. 3. The Court further says to the jury that you will find for the defendant in this case, unless you should believe from the evidence that the City of Hopkinsville, through its authorities, had the ability, either by their own force or by the aid of the citizens of said city, to have prevented the injury or destruction of plaintiff's property, and failed so to do, after said city, through its authorities, had notice or good reason to believe that said riot or tumultuous assemblage was about to take place; or that said city, through its authorities, had the ability, either by their own force or by the aid of the citizens of said city, to have prevented the injury or destruction of plaintiff's property after said riot or tumultuous assemblage had taken place in said city, and said city, through its authorities, had notice of the same in time to have prevented said injury or destruction, and failed so to do, and unless you so believe you will find for the defendant.

"No. 4. The Court further says to the jury that if you believe from the evidence that the plaintiff unlawfully contributed by word or deed towards inciting or inflaming such tumult or riot, or that he failed to do what he reasonably could towards preventing, allaying or suppressing it, you should find for the defendant.

"No. 5. The Court instructs the jury that at the time of the destruction of the plaintiff's warehouses the mayor of the city of Hopiknsville had the right and power, when deemed necessary by him, to enforce the laws of the city to save life or property or quell riots or mobs, to summons into service any of the citizens of said city either civil or military and in such cases, if any, it was his duty to be present and command in person."

Counsel for plaintiff complain of instruction No. 4 and earnestly insist that this instruction was so prejudicial to the rights of the plaintiff as to justify a reversal of the case. This instruction we think should not have been given. It is true the statute on which the action was founded provides that "no person shall maintain such action who shall have unlawfully contributed by word or deed toward exciting or inflaming such tumult or riot, or who shall have failed to do what he reasonably could toward preventing, allaying or suppressing it." But this clause should only be made the basis of an instruction when there is evidence tending to show that the plaintiff contributed by word or deed towards exciting the riot or failed to do what he reasonably could towards preventing or suppressing it. And there is no evidence in the record that the plaintiff, within the meaning of this statute, unlawfully contributed by word or deed towards exciting or inflaming the raid that resulted in the destruction of his property or that he failed to do what he reasonably could towards preventing or suppressing it.

The plaintiff rented his property to independent dealers in tobacco, and this, in the eyes of these Night Riders, was, we have no doubt, a grave offense, meriting the severest punishment they could inflict. But clearly the plaintiff had the lawful right to rent his property for lawful purposes to whom he pleased and for what purposes he pleased, and it is not to be tolerated that these lawful acts of a citizen are to be tortured into a contribution towards exciting or aggravating the vicious qualities of a mob who might believe that a citizen did not

have the right to make legal use of his property if it ran counter to their desires.

Neither is it to be said that because he did not employ guards to protect his property he failed to do what he reasonably could towards preventing its destruction. The private citizen who owns property in a city, may of course employ guards and resort to other lawful methods to protect his property, if he desires to do so; but his failure to do this, although he may have reason to anticipate its destruction by a mob, will not excuse the city from its duty to protect the property of its citizens from injury or destruction. The citizen who comes within the shield of this statute has a right to depend on the city for the protection of his property, and under this statute if the city fails in its duty, its liability is not diminished by the failure of the citizens to have it guarded. The statute subject to specified conditions imposed upon the city a liability, and this liability it can escape only by performing its duty as described in the statute.

Having this view of the matter, the only remaining question is, was this instruction prejudicial to the substantial rights of the plaintiff? If the evidence in behalf of the city had been less satisfactory, we would say that it was prejudicial, but in view of the fact that the record does not disclose that any objectionable argument based on this instruction was made by counsel for the city, or that any effort was made during the trial to impress the jury with the belief that the plaintiff did incite this mob, we do not think it was so prejudicial as to authorize a reversal. It simply had no place in the case. We have affirmed many cases in which instructions were given which should not have been given, upon the ground that they did not prejudice the substantial rights of the complaining party: Shellman v. Louisville Ry. Co., 147 Ky., 526; Louisville & Nashville R. R. Co. v. Grimes, 150 Ky., 219; Walter v. Louisville Ry. Co., 150 Ky., 652.

Wherefore, the judgment is affirmed.