## Louisville & Nashville Railroad Co. v. Grimes.

(Decided October 25, 1912.)

### Appeal from Pendleton Circuit Court.

1. Judgment—When Erroneous Instructions Not Prejudicial, Will not Be Reversed.—Where it is apparent that an erroneous instruction was not prejudicial, the judgment will not be reversed.

2. Negligence—No Recovery Allowed When Failure to Exercise Ordinary Care.—One who has been injured by the negligence of another, must use ordinary care to effect a cure; there can be no recovery for damages that might have been avoided by the exercise of such care.

3. Jurisdiction—Objection to Must Be Made in Time—Waiver.— An objection to the jurisdiction must be made in apt time, or it will be waived, where there is not a want of jurisdiction, where there is a mere irregularity in the proceedings, or where the objection is to be the form and not the substance.

4. Jurisdiction—Question of—How Question of to be Decided.—The question of jurisdiction is always open for determination, and is to be decided as regards the nature of the thing in controversy by the character of the suit, without reference to what defenses exist; and, when the jurisdiction is dependent upon questions of fact, it is for the jury, under proper instructions, to determine the question.

5. Jurisdiction—Evidence Conflicting as to Submission to Jury.— Where, in an action for personal injury, the issue as to the venue was made by a traverse, and the evidence was conflicting as to which of two counties the plaintiff was in at the time of the injury, the question of jurisdiction should be submitted to the jury by a proper instruction.

APPLEGATE & CLARKE and BENJAMIN D. WARFIELD for appellant.

MORGAN & DARRAGH and FORMAN & FORMAN for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

On November 1, 1910, Hattie Grimes, aged 64, took passage upon appellant's morning train from Cincinnati, Ohio, to Cynthiana, Ky. According to appellee's testimony, shortly after leaving Latonia, Ky., she tried to open the door of the ladies' toilet in the day coach in which she was riding, but found it locked. She repeated the attempt several times, at intervals, but without success. She reported the fact that the door was locked to a dining car waiter who passed through the

car, and directed him to inform the conductor and tell him to come and open the door for her, at once. The waiter tried the door, and finding it locked, went out and returned with the message that the conductor would be there in a few minutes. But the conductor failing to come, appellee again tried the door, and finding it still locked she again asked the waiter to get the conductor. The waiter again reported that the conductor would be there in a few minutes, but the conductor again failed to come to her assistance. Appellee then went to the dining car, which was next in the rear of the train, and knocked at the door, but no one answered her. She then went back into and through the car in which she had been riding and into the car in front of it, where she found the conductor taking tickets. By this time appellee's distress had become so great that she discharged the contents of her bladder into her underclothing. She asked the conductor why he had not unlocked the door of the toilet in her car, and, according to appellee, he said he was busy collecting tickets and would unlock it as soon as he got to that car; that he took her ticket and directed her to the toilet in the front end of that car, to which she went; and upon opening the door she found the toilet occupied by a drunken man with his person exposed to view. Appellee's condition was so urgent and the shock at finding the drunken man in the toilet was so great as to cause her to discharge the contents of her bowels upon her clothing, to her great discomfort and mortification. Appellee then went back into the car in which she was riding; and having procured the assistance of Mrs. Holsclaw, another lady passenger in that car, they went into the toilet of another car where appellee removed so much of her soiled clothes as she could dispense with. It became necessary for appellee to discard a flannel skirt; and, as she had left home for only a day's visit, she had no extra clothing with her. Upon her return to her car she heard the conductor unlock the toilet door. Appellee continued her trip, and upon her arrival at Cynthiana, and feeling cold and chilly after leaving the car, she went direct to the home of a friend, Mrs. Clark, near the station, to warm herself. She then went to the residence of her niece, where she remained for dinner, and thence to the office of Mr. Jouett, who was her attorney in an-

other matter, where she remained until train time. Appellee returned to Cincinnati on the afternoon train, procured some medicine at a drug store, and taking the first street car, she arrived at her home in Dayton between nine and ten o'clock that night. She was ill that night, and her attendants gave her hot ginger drinks and placed hot water bottles in her bed to counteract the effects of a chill. A physician was called the next morning who said appellee was suffering with pneumonia. She remained in bed five or six weeks, and suffered great pain in the chest, and much mental anxiety. Previous to Nov. 1, 1910, appellee was a stout woman, doing her own house work, cooking and working for a family of three, and had not been unwell for more than three years.

The conductor admits appellee went to him in the front passenger car and asked why the toilet door had not been unlocked, and says he told her it had been unlocked; that if it was not then unlocked it was because it was occupied by another passenger; that he directed her to the ladies toilet in the car they were then in, and that she made no further complaint, and did not report to him her experience with the drunken man, or the untoward results. The waiter denied having any conversation with her; but upon this point she is strongly supported by the testimony of Mr. and Mrs. Holsclaw, who occupied a seat near the appellee and saw her talking to the waiter. Under this state of case Mrs. Grimes recovered a judgment for $1,250.00 damages, and the defendant appeals.

1. It is contended that the first instruction to the jury was erroneous because it required appellant, in the performance of its duty, to unlock the toilet rooms in each of the passenger cars and to keep them unlocked, except when occupied by passengers, until the train should arrive at or near Falmouth which was the next stop. The objection to this instruction is that it applied to the toilets of all the cars, and assumes that all of them were locked, when there is no evidence that more than one toilet was locked. While it is a general rule that an instruction should not be given unless there is evidence upon which to base it, the instruction before us was not prejudicial to appellant's substantial rights. It is drawn in general terms, and correctly defines appellant's duty as to the toilets in the passenger cars.

There were only two passenger cars in this train, and appellee was in each car during her trip. If the instruction had confined the scope of appellant's duty in the respect mentioned to the car in which appellee was riding, it would not have been open to the criticism now made, and would perhaps have given the law of the case with more precision. Appellee was not required, however, to leave the coach in which she was riding and search for a toilet in another coach; but since she did so, and the instruction applied to only those two coaches, it was not prejudicial. South Covington & Cincinnati Street Ry. Co. v. Constans, 25 Ky. L. R., 158, 74 S. W., 705. We have repeatedly held that although an erroneous instruction was given, the judgment will not be reversed on that account where it is apparent, as here, that it was not prejudicial. Shellman v. Louisville Railway Co., 147 Ky., 530.

2. The first instruction having permitted the jury to award damages for the discomfort and mortification suffered, appellant contends this was the full measure of appellee's damages, and it was error for the second instruction to authorize a further and additional recovery for doctors bill and such mental and physical suffering and sickness as was the natural and proximate result of the removal of appellee's underclothing, the total recovery not to exceed the sum claimed in the petition. The petition being broad enough in its terms to cover these several items of damage, appellant's criticism of the second instruction rests upon the legal assumption that appellee cannot recover for the items of damages covered by the second instruction. The substance of appellee's claim under the second instruction was, that she contracted pneumonia because she was compelled to discard her flannel skirt and go without sufficient clothing the remainder of the day; while appellant insists it was appellee's duty to procure another skirt upon her arrival at Cynthiana, and thus make her loss or damage as light as possible. In support of this contention appellant cites John C. Lewis Co. v. Scott, 95 Ky., 484, and other cases of that class, ending with C., N. O. & T. P. Ry. Co. v. Gillespie, 130 Ky., 217.

13 Cyc., 76, says:

"One who has been injured by the negligence of another must use ordinary diligence to effect a cure,

and there can be no recovery for damages that might have been avoided by the exercise of such care. Only ordinary care is required; and where there has been no neglect on the part of the injured party, and his injuries, were more serious, or resulted more seriously than it was at first supposed they would, there can be a full recovery for the entire result.''

This duty was imposed upon appellee by the fifth instruction, which required her to exercise ordinary care to protect herself from the consequences of the accident, and relieved the company from liability in case she failed to do so.

Appellant insists, however, that appellee did nothing towards supplying herself with other clothing, and that the evidence being all one way, she was confessedly guilty of contributory negligence. Appellant is mistaken in making so sweeping a statement. The exercise of ordinary care, did not, under the circumstances, necessarily require affirmative action. The weather was mild—the thermometer ranging between 45 and 65 degrees Fahrenheit. Under such conditions, it cannot be said as a matter of law, that appellee did not exercise ordinary care in failing to procure a new skirt. She might well have thought there was little or no danger from the weather. Moreover, she says she had no money with which to buy another skirt, and the lady she visited was not in a position to lend her one. There was ample evidence to carry this question of contributory negligence to the jury. Neither can appellant maintain its contention that appellee should not have been allowed to recover for her sickness for the reason that it does not appear that the exposure produced the pneumonia which appeared the next day. Ordinarily, pneumonia will not develop within a day; usually, it takes from three to five days for it to do so. But Dr. Wilson, a witness for appellant, testified that he ''could not say whether pneumonia might or might not develop the next day after, as the result of an exposure;'' and there being evidence tending to sustain appellee's contention, the determination of the question was properly left to the jury.

3. Finally, a question of venue is presented. Under section 73 of the Civil Code of Practice, this action must have been brought in the county ''in which the plaintiff or his property is injured; or in which

he resides, if he reside in a county into which the carrier passes." As Mrs. Grimes resided in Campbell County, this section conferred jurisdiction of this action upon the courts of Pendleton County, only in case the injury happened in that county. I. C. R. R. Co. v. Stith's Adm'x., 120 Ky., 237; 1 L. R. A. (N. S.), 1014. The petition alleges that the "breaches of appellant's contract, as aforesaid, or the greater part thereof, and the distressing evacuations herein set out, occurred in Pendleton County, Kentucky," and the answer specifically traverses those allegations. Proof was taken by appellee tending to show the acts complained of occurred in Penldeton County, while the appellant introduced evidence tending to show they occurred in the adjoining county of Kenton. It was agreed of record that Latonia Station is in Covington, Kenton County, Kentucky, and is four miles from Cincinnati; that the line between Kenton and Pendleton Counties is between twenty-five and twenty-six miles south of Cincinnati, and between fourteen and fifteen miles north of Falmouth, in Pendleton County; that Ryland Station is between thirteen and fourteen miles south of Cincinnati, and that it is forty miles from Falmouth to Cincinnati. It further appeared that DeMossville, in Pendleton County, is a mile south of the county line; that the running time between Latonia and DeMossville was twenty-nine minutes; that the running time of the train between DeMossville and Falmouth was twenty-one minutes; and that about the time appellee finally returned to her car, after changing her clothes, or shortly thereafter, the brakeman called Falmouth as the next stop. From this proof, appellant argued that the cause of action occurred in Kenton County; that appellee could not recover in Pendleton County; and in support of that view it offered instruction "A," which reads as follows:

"The court instructs the jury that if they believe from all the evidence in the case that the accident complained of by plaintiff happened to her in Kenton County, then they should find for the defendant."

The trial court refused to give this instruction, and did not instruct upon that question. It is insisted for the appellee, however, that since the evidence was all one way, and showed beyond a doubt that the injury was received in Pendleton County, the court ruled properly in declining to instruct on that question. We

do not so read the evidence. It is decidedly conflicting. To illustrate: It took the train 29 minutes to run the twenty miles from Latonia to DeMossville, the entire distance, with the exception of the last mile, being in Kenton County. The conductor says he began taking tickets after leaving Latonia, and had only gone through the coach occupied by the colored passengers, and not more than half or two-thirds of the way through the front passenger car, when Mrs. Grimes accosted him about the toilet, and her misfortune followed immediately. It might well be argued from this testimony that the train was then in Kenton County, since it probably would not, or might not, require nearly half an hour for the conductor to take the tickets in less than two coaches.

Neither was the question of jurisdiction waived by failing to raise it by a separate plea in abatement, or by an affirmative plea in the answer; for the situs being a jurisdictional fact necessary to be alleged, a traverse made the issue.

In 11 Cyc., 699, the rule is thus stated:

"Want of jurisdiction over the subject matter may be taken advantage of at any stage of the proceedings. An objection to the jurisdiction must be made, however, in apt time, or it will be waived, where there is not a want of jurisdiction, where there is a mere irregularity in the proceeding, or where the objection is to the form and not the substance. The question of jurisdiction is always open for determination, even though there may be in the same case prior rulings of the same or another judge, sustaining the jurisdiction, and it is to be decided as regards the nature of the thing in controversy, by the character of the suit, without reference to what defenses exist. These questions also rest in the sound judicial discretion of the court itself, to be decided in the first instance by the court whose judicial action is first invoked, except where dependent upon questions of fact, when the jury may, subject to the direction of the court, as to matters of law, affirm jurisdiction or not by a general verdict."

The question was before this court in L. & N. R. R. Co. v. Reaume, 128 Ky., 90, where the jurisdictional fact in issue was whether the plaintiff, in a tort action, resided in Kenton County—residence in that county being necessary for a maintenance of the action. In

passing upon the question of practice which is now before us, we said:

"On the trial a question was made as to the residence of appellee; the appellant insisting that she was a resident of the State of Ohio, and not of Kenton County, Ky., at the time she brought the action in the Kenton Circuit Court. Upon this point, which will probably not arise on another trial, the jury, under proper instructions, found that appellee was a resident of Kenton County, and there was evidence sufficient to warrant their finding in this particular."

We have the same question of practice here, and under the pleadings and the evidence, the question as to the county in which appellee's injury was received should have been submitted to the jury. For the failure of the trial judge to so instruct, the judgment is reversed for further proceedings.