# Louisville & Nashville Railroad Company, et al. v. Bennett.

(Decided December 1, 1922.)

## Appeal from Muhlenberg Circuit Court.

1. Waters and Water Courses—Railroad Embankments—Negligent Construction—Eminent Domain.—Where a permanent structure by a railroad is negligently constructed by the failure to leave sufficient openings in an embankment to permit the ordinary volumes of water to pass through, but the same cannot be repaired or remedied at a reasonable expense so as to avoid recurring injuries by the water, or where the expense of repairing or remedying would be so great as to authorize the company in the exercise of its right of eminent domain to condemn the adjacent property so injured by the negligent construction, there must be a recovery once for all; and this is not dependent upon whether the permanent structure is or not negligently constructed, but is based upon the sound public policy that the interest of the public requires that a carrier of passengers and freight authorized by law to exercise the right of eminent domain shall not be required to make such repair where the cost thereof is out of proportion to or greater than the injury to the adjacent property

2. Waters and Water Courses—Railroad Embankments—Evidence.— The issue being made in such an action as to whether the structure can be repaired at a reasonable expense, the court erred in not permitting the introduction of the evidence of value of the adjacent property and in refusing to instruct the jury on that subject.

3. Waters and Water Courses—Railroad Embankments.—Evidence.— The reasonable expense contemplated is such expense as will not exceed in value the injury to the property involved and if the expense of the repair work is equal or in excess of the injury to the property because of the negligent construction, then there should be a recovery as for permanent injury and once for all.

B. D. WARFIELD and TAYLOR, EAVES & SPARKS for appellants.

HUBERT MEREDITH for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

Appellee is the owner of a farm of sixty-five and a fraction acres adjacent to the right-of-way of the Louisville & Nashville Railroad Company in Muhlenberg county.

The petition seeks a recovery for temporary damages to plaintiff's crops on about fifteen or twenty acres

of his farm brought about by water backing up and standing upon his land in great quantities and for unusual lengths of time, which, as alleged, was caused by (1) the negligent construction of a fill or embankment by the railroad company and its negligent failure to provide therein sufficient openings for the outlet of the water; (2) because of defendant's negligence in permitting insufficient openings in that embankment to become filled up; (3) because of defendant's negligence in permitting a drain or ditch on its right-of-way which conducts the water to the culverts in the embankment to fill up with weeds, brush and debris, thereby obstructing its flow; (4) because defendant negligently constructed and maintained a fence across this ditch at the line of its right-of-way; and (5) because defendant negligently diverted the water from another valley by the construction of a deep cut and caused same to flow over and upon plaintiff's lands.

After alleging these things, it is further alleged that: "The injuries and damages to his said lands, to its use and the crops grown and attempted to be grown thereon could have been and can be easily averted by providing suitable, proper and sufficient culverts and openings at proper locations under said railway through said embankment, and by keeping the same cleaned out and free from obstructions, and by removing the obstructions across said ditch or channel and keeping it free therefrom, and by turning the water that accumulates in the cut into the channel where it originally run, and that all of this can be done at a very moderate cost, and that, therefore, the damages herein complained of are what is defined and denominated by the laws of this state as temporary damages."

The defendants—being the railroad company and the agent of the president, it appearing that for a part of the five year period each of them was operating the railroad—filed their joint answer in three paragraphs; in the first paragraph the material allegations of the petition were all denied, including that portion above quoted referring to the alleged temporary damages. In a second paragraph it is alleged that all of the injuries of plaintiff, if any, were caused by the defendant Louisville & Nashville Railroad Company which were sustained, if any, prior to December 31, 1917, and all the other injuries, if any, were sustained by plaintiff during the period of Federal control. In a third paragraph it

is alleged that all the embankments, cuts and fills and other alleged obstructions mentioned in the petition were constructed and made as a part of the original road-bed of the Louisville & Nashville Railroad and that all of them were made more than five years next before the commencement of the action and have been maintained as originally constructed by the two defendants since that time as an integral part of the original railroad; and that whatever damages, if any, plaintiff has sustained were caused by the original construction of said road, and reliance is had upon the lapse of time and the statute of limitations. And as a part of that third paragraph it is affirmatively alleged:

"They state that the alleged damages complained of were, and are, permanent, and that the structures, cuts, embankments and fills referred to, were and are, permanent structures, constituting a part of said railroad."

By an order of court the affirmative allegations in the answer were controverted of record and the parties went to trial on the issues thus made.

The jury returned a verdict for seven hundred dollars against the Louisville & Nashville Railroad Company, and for three hundred dollars against the agent of the President for damages suffered during the period of government control. Their motion and grounds for a new trial were overruled, and they have appealed.

On the trial the defendants were permitted to prove that to repair the embankment and place therein culverts of sufficient space to carry through the water as estimated by plaintiff's witnesses would cost four thousand dollars; but they were denied the right to prove, which they offered to do as shown by avowals in the record, that plaintiff's whole farm was not worth in excess of twelve or fifteen hundred dollars, and that the portion of the farm which was occasionally overflowed, was not worth to exceed one hundred and fifty to one hundred and eighty-five dollars. The refusal of the trial court to permit this evidence of value to be introduced was based apparently upon the view that the issues made in the pleadings did not authorize it, because there was no specific allegation that the cost of thus repairing the structure would be greater than the damages or injury to appellee's property.

The purpose of defendants in offering this evidence was to lay the foundation for an instruction authorizing a recovery as for permanent damages, including past and

prospective injuries, and the court consistently following out its ruling on the evidence, declined to give any instruction whatever looking to an assesment of the whole damage once for all in this action.

From the nature of such controversies there has been much confusion in the opinions of this court, and indeed in those of most courts, as to the application of the rules of law and procedure so as to determine when there shall be a recovery once for all and when there may be recurring recoveries as the injuries occur.

But this court has laid down what appear to be very practical and sound rules in such cases, and has said, (1) that a single recovery must be had for all damages resulting from a permanent structure properly built; (2) that for a structure unlawfully or negligently built, though intended to be permanent, recurring recoveries for such improper or negligent construction may be had as the injuries occur; (3) that for a temporary structure recurring recoveries may be had as the injuries occur; and (4) that whether the construction was negligent is a question for the jury under the evidence, if the same be conflicting. M. H. & E. Railroad Co. v. Graham, 147 Ky. 604. But there is yet another class of such cases, to which this belongs, recognized and accurately described in that opinion; and that is where the structure, though permanent and negligently constructed, cannot be repaired or remedied so as to avoid the recurring injuries, at a reasonable expense, or where the expense of repairing or remedying would be so great as to authorize the railroad company, in the exercise of its right of eminent domain, to condemn the property so injured by the negligent structure, then there must be a recovery once for all. This latter rule, so clearly recognized in the Graham case, it will be observed is not dependent upon whether the permanent structure is negligently constructed, but is based wholly upon the sound public policy that the interest of the public requires that a carrier of passengers and freight, a public servant authorized by law to exercise the right of eminent domain, shall not be required to make such repair of a structure thus used in the public service, where the cost of the repair is out of proportion to or greater than the injury to the adjacent property.

The facts here present a good illustration of the wisdom of the rule. Here we have a farm, as appellants offered to prove, valued at not exceeding fifteen hun-

dred dollars, and a small portion of that farm is periodically overflowed because of the inadequacy of the culverts under a railroad fill. The value of the land actually covered by the water is not exceeding two hundred dollars, as defendants offered to show, and yet if this carrier, thus engaged in public service, may be subjected to the annoyance of recurring suits year after year until in desperation it must spend four thousand dollars in repairs to prevent the injury to two hundred dollars' worth of land, not only will the public in the end have to meet that expense, but the traveling public will probably be subjected, while these repairs are being made, to delays, embarrassments and annoyances in the operation of the transportation system. Ridley v. Seaboard & Roanoke Railroad Co. (N. C.), 32 L. R. A. 708.

But it is said by appellee that there is no pleading by appellants authorizing the introduction of such evidence or the giving of such an instruction; but in this we can not concur.

The distinct issue is made in the pleading whether this work can be repaired at a reasonable expense; the plaintiff alleges in his petition that it can be so repaired, and the defendants not only put that in issue, but affirmatively allege in another paragraph that the structures involved are permanent structures and that allegation was controverted on the record.

In the Graham case in discussing this class of cases involving the repair at a reasonable expense it is said that:

"If the trouble may be remedied at reasonable expense, it may be regarded as temporary; but if the trouble cannot be so remedied it should be regarded as permanent; and this is a question for the jury. (L. & N. R. R. Co. v. Whitsell, 125 Ky. 433; I. C. R. R. Co. v. Haynes, 122 S. W. 211; L. H. & St. L. Ry. Co. v. Roberts, 144 Ky. 820.)"

From this it is clear that the vital issue in such a case is whether the permanent structure can be remedied at a reasonable expense, and that issue having been clearly made in this case, it follows that the court erred in not permitting the introduction of the evidence of value, and in refusing the instruction on that subject offered by appellants.

The court should likewise instruct the jury that the reasonable expense contemplated is such expense as will not exceed in value the injury to the property involved.

That is, if the reasonable expense of the repair work is equal to or in excess of the injury to the property because of the negligent construction, then there should be a recovery as for a permanent injury and once for all.

Either party may, on the return of the case, amend the pleadings, and the question of excessive damages is expressly left open.

The appeal of the agent of the President is granted, and each of the judgments is reversed with directions to grant appellants a new trial and for further proceedings consistent herewith.