## Chicago, St. Louis and New Orleans Railroad Company, et al. v. Bullock, et al.

(Decided November 22, 1927.)

Appeal from Hickman Circuit Court.

1. Damages.—Where the land of a person is injured by a permanent structure erected by another, the landowner's measure of damages is the diminution of the market value of such land.

2. Action.—Where one's land is injured by the erection of a permanent structure by another, such landowner must recover all damages thereto in one suit.

3. Action.—Where one's land is injured by a structure of a temporary character erected by another, such landowner may recover recurring damages, not being required to recover all possible damages in one suit.

4. Waters and Water Courses.—Where, in a landowner's suit for damages for flooding his crops, caused by the defendant railroad's blocking certain ditches and constructing others inadequate to carry surface waters from heavy rains, court properly withdrew question from jury whether embankments and ditches constructed by the railroad were permanent or temporary structures, where unconflicting evidence showed that the ditches, even if considered permanent structures, could have been altered at very little expense so as to be of a size sufficient to carry such waters.

TRABUE, DOOLAN, HELM & HELM, ROBBINS & SMITH, JOE W. BENNETT and R. V. FLETCHER for appellants.

HOLIFIELD & GARDNER for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Appellant commenced the construction of a railroad known as the "Cut Off" in the year 1924, and was engaged in the construction thereof in the year 1925 when crops growing on the land of appellee Bullock were injured by high water which came on the 19th day of July 1925.

W. W. Bullock was the owner of a tract of land in Hickman county bordering on the Graves county line about one-half mile west of the new railroad track above referred to running from Metropolis, Ill., to Fulton, Ky., a distance of about 42 miles. Jordon Ghent and Henry Ghent were tenants on Bullock's farm. They were engaged in raising a crop of tobacco, as was Elmer Brown, another tenant. Bullock had an interest in the tobacco crops, and the Ghents had an interest in that part which

they were cultivating, but no interest in that cultivated by Brown, and Brown had no interest in that cultivated by the Ghents. The Bullock farm is situated in what is known as the Obion river drainage district, which was established several years ago on petition of W. W. Bullock. Along the Obion river a canal had been excavated, which is sometimes referred to as the Bullock drainage ditch, and at other times as the Obion canal. The railroad runs north and south, and the ditch or canal runs east and west. In the construction of the railroad it erected a dump or embankment across the Obion bottom, or valley, which was approximately 32 feet high, 125 feet wide at the bottom, and 20 feet wide at the top. The appellants acquired a right of way on the east side of the farm of one A. L. Gibson, and the embankment, or dump, was erected on this right of way, and the ditches referred to in the evidence were also dug on the right of way. A little less than one-half of a mile north of the Bullock drainage ditch or canal three natural branches came together and flowed south to the ditch or canal. This ditch from the junction of the three branches was on the right of way purchased by the appellants, and in the construction of the railroad dump, or embankment, across the valley, this ditch or branch was filled up and covered up entirely from the junction of the three branches to the Bullock drainage ditch. As a substitute for the ditch or branch which had been filled up by appellants, they dug a ditch on the west side of the right of way and another ditch in the east side of the right of way, and these ditches were to take care of the drainage which formerly flowed in the ditch or branch which was filled up. The maps which are brought up with the record show substantially the facts detailed above.

The appellees contend that the new ditches made by the appellants were inadequate and caused the overflow with resulting damage to appellees, while the appellants contend that the two ditches taken together were more adequate than the old branch or ditch which was filled up. Two of the branches referred to as forming a junction with a third are on the west side of the right of way, and the dump or embankment, while the other branch is on the east side.

Appellees contend that appellants, without making any investigation as to the rainfall in the community, or the extent and area of the water that would necessarily have to be carried from the junction of the three

branches, filled up the ditch which had previously protected the land of appellee Bullock, which ditch was 30 feet to 40 feet wide and 10 to 20 feet deep, running more than a quarter of a mile along the eastern edge .of the Gibson lands, and that, as a substitute for the ditch which had been filled up, dug another ditch 14 feet wide at the top, 8 feet at the bottom, and 3 feet 2 inches deep. The ditch around which the evidence revolves was excavated in the winter or early spring of 1924, and it is contended by appellees that the ditch was allowed to grow up in weeds and undergrowth which caused it to catch such debris as was washed down by small rains, and that its efficiency was thereby materially impaired.

The crops on the land of Bullock had been planted, and on the 19th day of July when the water came some of the crops were matured. The 23½ acres of tobacco had been topped and some of it suckered. When this rain came on the 19th day of July the water flowed into the ditch filling it up to the point where it overflowed and ran down through the lands of Gibson, whose farm was next to the railroad, and across his land and on to the land of appellee Bullock, thereby injuring and destroying his crops. It appears that the water broke over the embankment of the ditch to the extent of about 90 yards, and that the land of Bullock was covered by the water for several days. It is also contended by the appellees that the ditch which was filled up had been sufficient to carry the water and protect the land of the appellee Bullock as well as others situated on the western side of the railroad. The evidence tends to show that the ditch which was filled up had been effectually carrying the water for 6 or 7 years prior to its destruction, and that it had never overflowed except on one occasion shortly after it was first constructed, and that on that occasion it was winter time and there had been a heavy and extended rain of many days' duration. There is some proof that the other ditch which was on the east side of the railroad was inadequate and that the water therefore backed up and flowed under a trestle to the west side into a ditch on the west side, and that for that reason the ditch on the west side was forced to carry to some extent the water which was intended to flow through both ditches.

The appellees instituted their suit against the appellants to recover damages for injury done to their crops

by water which they alleged appellants had negligently caused to flow upon the land of Bullock. The basis of the action is that appellants filled up and destroyed a ditch which had previously protected the land of Bullock from an excess flow of water and negligently constructed another ditch which did not protect his land from the water. After alleging that the appellants had negligently filled up an adequate ditch, the petition aptly alleged that the appellants negligently constructed a new ditch and, that by reason of such negligence, it failed to take care of the water and failed to drain the valley so that the surface water of the valley, which had formerly flowed in to the original ditch, was not taken care of or drained by the new ditch, but was diverted from the new ditch over and upon the lands located in the valley, including the land of W. W. Bullock, and that the water was thereby caused to back up and stand upon his land and upon the crops growing thereon in great quantities, and for unusual lengths of time, so that by reason thereof the crops of appellees were injured and damaged. The jury returned a verdict in favor of appellee Bullock, for $1,366.67, and for Jordon Ghent and Henry Ghent for $733.22, and Beulah Brown, administratrix of Elmer Brown, for $400. Appellants, feeling much aggrieved at the judgment, are vigorously attacking much that was done in the lower court, but their attack is largely centered on the action of the court in giving instructions Nos. 1 and 2, and refusing to give instruction D. The argument is based upon the assumption that appellees alleged in their petition that the embankment and ditches built by the appellants on their right of way were temporary structures, and that these structures could be remedied without great expense, while the appellants contend that the railroad dump and ditch were permanent structures. It is argued that evidence was introduced by both sides on these questions, and for that reason the court should have left it to the jury to determine as a matter of fact whether the embankment and ditches were permanent or temporary structures. It is argued that the court invaded the province of the jury and determined as a matter of law what these structures made by appellants were merely temporary and successive actions for damages could be maintained on account of the inadequacy of the new ditch. It is also insisted that the court not only took the necessary questions of

fact from the jury, but assumed that the structures were temporary.

We doubt very seriously whether the question of permanent structures or temporary structures enters into this case at all. The petition is rather founded upon the idea that the appellants negligently filled up one ditch and negligently failed to provide another ditch or ditches which would adequately carry away the flow of the water. It is insisted, however, by counsel for appellants, that appellees alleged in their petition that the structures were temporary. We find this allegation in the petition:

> "Now plaintiffs state that the aforesaid injuries and damages to the above-mentioned crops grown and attempted to be grown by these plaintiffs, in the year 1925 upon the land of plaintiff W. W. Bullock, and in the above-mentioned valley, could have been, and subsequent recurrences can now easily be, avoided by providing a ditch or water course sufficient to properly and adequately take care of and drain the surface water from said valley; and that, therefore, the damages herein complained of are temporary damages."

We do not know just what counsel for appellees had in mind in making such allegation. The allegation relates to the ditches rather than to the dump or embankment, and we do not believe it can be construed as an admission by appellees that the embankment or dump which had been erected was a temporary structure. According to its very nature it was a permanent structure, and the suit is not based upon the erection of this dump or embankment other than to the extent that appellees claim that after having filled up the old ditch another ditch was negligently excavated which was not sufficient to carry away the water. In cases where the doctrine of permanent structures or temporary structures apply a very different rule as to the measure of damages must be given. If the structures are permanent the damages to which a plaintiff is entitled, if any, is the diminution of the market value of his land, and he can bring only one action and must recover all the damages to which he is entitled. If, however, the structure is temporary the plaintiff may recover recurring damages. The difference in recovery when the structure

is permanent and when it is temporary is fully set out in the case of Louisville, Henderson & St. Louis Railway Co. v. Roberts, 144 Ky. 820, 139 S. W. 1073, and counsel for appellants say that that case is on "all fours" with the case under consideration. If it is it will follow as a matter of course that the question as to whether the structure was permanent or temporary should have been left to the jury under the proof unless the rule announced in that case has been modified or departed from by this court, and if it should be held that this is a case where the question of whether the structure is permanent or temporary enters into the matter. In that case it was charged in the petition that the railroad company "negligently reconstructed its embankment by raising the same, and in doing so negligently cut away its right of way where the natural stream crosses the railroad company's right of way, and removed the earth which naturally formed the banks of said stream where same crossed said right of way above and next to the lands of the plaintiff, so that the water which theretofore was carried into the larger stream was diverted and caused to flow down to said right of way and over and on the plaintiff's land, causing his land to be cut and the soil washed away." The basis of recovery in that suit was that the structure itself had been so made that the earth which formed the banks of the stream had been cut away, and that the water after flowing over the right of way then flowed on to the land of the plaintiff. In this suit no complaint is made about the dump or embankment, but the gravamen of the complaint is that the appellants cut a ditch in such a negligent way that the land of Bullock was overflowed.

Counsel for appellants rely on the case of Louisville & Nashville Railroad Company v. Bennett, 196 Ky. 679, 246 S. W. 121. It is argued that in the Bennett case the petition alleged that the defect could be remedied at a reasonable expense, and because of such allegation the court held that proof might be heard on that issue. It is urged that there is no such allegation in the petition of appellees, but if this is treated as a case falling within the rules announced in the Bennett case and the Roberts case, supra, it appears that the allegation above quoted from the petition shows that counsel for appellees are mistaken in their statement that there is no such allegation in the petition.

That we may have before us the rules announced by this court for the guidance of trial courts on questions of permanent or temporary structures, we quote from the Bennett case, supra, as follows:

"From the nature of such controversies there has been much confusion in the opinions of this court, and indeed in those of most courts, as to the application of the rules of law and procedure so as determine when there shall be a recovery once for all and when there may be recurring recoveries as the injuries occur. But this court has laid down what appear to be very practical and sound rules in such cases, and has said: (1) That a single recovery must be had for all damages resulting from a permanent structure properly built; (2) that for a structure unlawfully or negligently built, though intended to be permanent, recurring recoveries for such improper or negligent construction may be had as the injuries occur; (3) that for a temporary structure recurring recoveries may be had as the injuries occur; and (4) that whether the construction was negligent is a question for the jury under the evidence, if the same be conflicting. M. H. & E. Railroad Co. v. Graham, 147 Ky. 604 (144 S. W. 737). But there is yet another class of such cases, to which this belongs, recognized and accurately described in that opinion; and that this is where the structure, . . . cannot be repaired or remedied so as to avoid the recurring injuries, at a reasonable expense, or where the expense of repairing or remedying would be so great as to authorize the railroad company, in the exercise of its right of eminent domain, to condemn the property so injured by the negligent structure, then there must be a recovery once for all. This latter rule, so clearly recognized in the Graham case, it will be observed, is not dependent upon whether the permanent structure is negligently constructed, but is based wholly upon the sound public policy that the interest of the public requires that a carrier of passengers and freight, a public servant authorized by law to exercise the right of eminent domain, shall not be required to make such repair of a structure thus used in the public service, where the cost of the repair is out of pro-

portion to or greater than the injury to the adjacent property.''

In the case of City of Richmond v. Gentry, 136 Ky. 319, 124 S. W. 337, 136 Am. St. Rep. 255, this court said:

"If, however, the structure is one which can be removed, or remodeled so as to obviate a recurrence of the damage, then it is better to allow a recovery for only so much of the damage as had occurred up to the time of the trial. For the parties thereafter could and might remove the objectionable feature. In such event it would be unjust to allow a recovery of damages in excess of the injury already sustained, as future damages might not ensue.''

The lower court on the trial of this case followed that rule; but if there was evidence showing, or tending to show, that the ditch or ditches complained of were permanent structures and that they were constructed lawfully and without negligence and could not be remedied at a reasonable expense, then there would have been something to submit to the jury if the evidence was conflicting on these points. An examination of the evidence, however, seems to show that there was little if any conflict. It is true that the engineer for appellants testified that the ditch was a permanent structure. He also stated that in his opinion the ditch was sufficient to carry all the water that would flow down the branches in time of ordinary floods and rainfalls, but he had not arrived at his opinion through a calculation according to the area that had to be drained. He was also asked whether it was possible since the dump was built for the flood water coming down on the east side to get on the west side of the dump and run over the land of Bullock. His answer was that he did not consider it so. Although he stated that the ditch was a permanent structure, he admitted that the ditch was not so constructed, that it could not be made to carry a larger volume of water. Appellee Bullock testified that the cost of making the ditch so that it would carry the flow of water would be about an additional $800. Mr. Gibson, another landowner in the valley, testified that the ditch could be remedied so that it would carry the flow of water at $1,000. Elmer Hopkins, a civil engineer, testified that the ditch could be remedied at an expense of $100 to $150. This appears to be all of the evidence on the question. If the ditch could be considered

a permanent structure, the proof is uncontradicted that it could be remedied at a comparatively small expense. The evidence itself takes this case out of the rule announced in the case of Louisville, Henderson & St. Louis Railroad Co. v. Roberts, supra.

On the second appeal of the case of L. & N. R. R. Co. v. Bennett, 207 Ky. 776, 271 S. W. 71, this court reversed the judgment because there was no evidence upon which to submit to the jury the question of whether the embankment was temporary or permanent, and on which the jury might base a verdict such as it returned awarding appellee temporary damages, because such damages could flow only from a temporary structure or from a structure negligently constructed and which might be remedied at an expense not in excess of the reasonable value of the lands which were caused to overflow by the negligent construction of the embankment. In that case the cost of remedying the defective culvert would have been $5,000 to $12,000, and the total damage did not exceed $960. This court there held that it was not proper to submit the question to the jury, as there was no evidence showing that the structure could be remedied at a reasonable expense, and turning the rule around, we can well say here that the court should not have submitted the question of whether it was a permanent or temporary structure to the jury, because the evidence shows that even if it were a permanent structure it could be remedied at small expense. So far as the ditch is concerned, and that is the subject with which we are dealing, the appellees alleged in their petition that it could be remedied at a reasonable cost. In their answer appellants alleged affirmatively that the structures were permanent, and the appellees admitted that the dump or embankment was a permanent structure, but denied that the ditch was such. Regardless of how the issue was raised the evidence was introduced and the case at least was brought within the second rule announced in the Bennett case, supra, if the ditch was negligently made, and that question was submitted to the jury.

If we treat this case as one to recover damages for the erection of a permanent structure which was unlawfully and negligently constructed, the evidence is sufficient to make out a case under the rules announced in the Bennett case, supra, and likewise if we treat the ditch as a temporary structure the evidence is sufficient to make out a case, and, as the rule is the same in each instance

it makes no difference how it was treated by the lower court. The latest case on the subject, and one which we think is well in point, is the case of Honaker v. C. & O. R. R. Co., 209 Ky. 576, 273 S. W. 81, where the rules governing such matters are again restated. The case of C. & O. Railway Co. v. Pike County Realty Co., 208 Ky. 279, 270 S. W. 764, appears to have grown out of the same facts as the case last above cited. The court there upheld a recovery without any reference to whether the structure was permanent or temporary, and without entering into a discussion of the matter. In that case the railroad company had constructed a catch-basin and allowed it to become obstructed by debris which was permitted to accumulate, and it was held by this court that it could not be doubted that the railroad company was liable for the consequent injury if the evidence established the cause of action to the satisfaction of the jury.

Another point raised by counsel for appellants is that the verdict is palpably against the evidence on the question of whether the damage was caused by an extraordinary rain. We do not think that the evidence shows that the rain was such as might not have been expected. It is true it was extraordinary in that such rains did not often come; but we cannot say that the verdict of the jury is against the weight of the evidence.

It is further argued by counsel for appellants that the instruction on the measure of damages was improper, but the argument is based upon the idea that the structure was a permanent one, and therefore the measure of damages should have been the diminution in the value of the farm of the appellee Bullock.

It is next complained that improper evidence was admitted as to the damage to the crops. We are of the opinion that the evidence was proper. The case of Madisonville H. & E. R. R. Co. v. Cates, 138 Ky. 257, 127 S. E. 988, 137 Am. St. Rep. 379, approves instructions on the measure of damages for injury to the crops very similar to the instruction given in this case, and the instruction in this case is consonant with the evidence on the measure of damages.

Upon consideration of the whole case we have reached the conclusion that appellants had a fair trial, and that there is no material error to the prejudice of their substantial rights.

Judgment is affirmed.