### Norton Coal Mining Company v. Wilkie, et al.

(Decided April 24, 1928.)

Appeal from Hopkins Circuit Court·

1. Waters and Water Courses.—In action by landowner against a mining company for injury to land from waste matter washing into creek from defendant's lands, allegation in petition that, by reason of defendant's wrongful acts, the rental value of the land had been diminished during a five-year period preceding suit, held a sufficient allegation on such point without alleging that plaintiffs did not receive from tenants the full rental value of the farm for such years; that being matter of proof on question of damages.

2. Waters and Water Courses.—In landowner's action against coal mining company for injury to land resulting from the pollution of a creek bounding and running through plaintiff's land, evidence held too vague and intangible to support verdict for plaintiff as to damages.

3. Waters and Water Courses.—In action by landowner against coal mining company for pollution of creek resulting in injury to land, that witnesses testified rental value of the land had been reduced one-half was not sufficient in determining damages, where total rental value of land for years in question was not established, since a jury cannot be left to speculate as to the amount of damages.

4. Vendor and Purchaser.—In action by landowner against coal mining company for damages to farm by the pollution of a creek, held that landowner could not recover against such company for any damages growing out of conditions which existed at time farm was purchased, and which conditions were known or might, by the exercise of ordinary prudence, have been known, by the purchasers at time of purchase.

5. Waters and Water Courses.—In action by landowner against coal mining company to recover for damages to land and crops, extending over five-year period, by defendant's pollution of a creek, plaintiff must show all of the conditions for each year in such a way that a jury may reasonably determine the extent to which crops were damaged by defendant's wrongful acts.

6. Waters and Water Courses.—In action by landowner against coal mining company for pollution of creek by operation of a washery, resulting in damage to farm crops, measure of damages is the difference in value of the crops which would have been produced but for the operation of the washery and the crops which were produced with the washery in operation.

7 Damages.—In action by landowner against another for injury to plaintiff's land, caused by the negligent construction of a permanent structure, whether the defect could be remedied at reasonable cost is for the jury on conflicting evidence.

8. Waters and Water Courses.—Landowner, suffering damage from the pollution of a creek, could not recover damages which he might have avoided by the exercise of ordinary care.

C. J. WADDILL for appellant.

CHARLES G. FRANKLIN and J. A. JOHNSON for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Appellees own a farm in Hopkins county near the town of Nortonville through which flows Pleasant Run creek. The farm consists of 231 acres. The creek bounds the farm for a distance, and then flows entirely across the farm, emptying into Drake's creek, which creek forms the boundary to the farm for some distance.

Appellant operates a coal mine near Pleasant Run creek and in its watershed. A few years before the institution of this action, appellant installed a coal washing plant near Pleasant Run creek and within the watershed of that creek.

Appellees alleged in their petition that appellant had caused water, slack, coal, and other waste matter to be thrown on the surface in the watershed of Pleasant Run creek, which substances flowed into the tributaries of that creek, thence into that creek, and as a result thereof these substances were cast upon the farm of appellee. It is alleged that these substances from the mines of appellant were impregnated with copperas and other deleterious matter, which rendered them destructive of crops, timber, and soil. It is further alleged that the waters of pleasant Run creek and Drake's creek had been polluted, poisoned, and contaminated to such an extent as to destroy vegetable and animal life, and to render the water unfit for use for stock purposes, and that the crops growing upon the farm of appellees had been injured and destroyed. The allegations of the petition are that the reasonable rental value of the farm of appellees has been diminished during the five years next before the commencement of this action in the sum of $3,000. It is alleged that the injury to the farm was temporary, and that it could have been prevented by appellant at a reasonably small cost.

The answer contains a traverse, a plea of contributory negligence, and a further plea that the matters complained of by appellees in their petition existed at the time they purchased the farm, and that the farm was purchased with actual notice of the conditions.

In an amended answer, appellant went more into detail concerning the alleged contributory negligence. It alleged that the creeks, channels, water courses, and ditches had not been properly attended to by appellees; that the drainage of the farm had not been properly looked after, and that, because of the failure of appellees to exercise ordinary care for the protection of their farm, appellant could not be held responsible for the alleged injury to the land and crops.

A jury heard the proof and instructions of the court, and returned a verdict in favor of appellees for $2,000. The motion and grounds for a new trial embrace all of

the grounds mentioned in the Code. We shall consider those discussed in the briefs.

The first alleged error complained of is that the court should have sustained the demurrer to the petition. It is pointed out that the petition does not allege that appellees did not receive from their tenants the full rental value of the farm for the years mentioned in the petition. The petition aptly alleged that, by reason of the wrongful acts of appellees, the rental value of the land had been diminished during the last five years immediately preceding the institution of the suit. The allegation on this point was sufficient. It was a matter of proof as to whether appellees had been damaged by reason of the alleged injury to the land and the crops grown thereon during the years in controversy.

It is next urged that the evidence is not sufficient to support the verdict of the jury. A consideration of this ground requires a statement of the facts developed on the trial. The farm was purchased by appellees in the fall of 1918. It is subject to overflow frequently. All of the farm, except two or three acres around the house, was covered by water at times during each year. The entire farm is flat, and the elevation is but a few feet above the level of the water in the creeks at normal stage. Pleasant Run creek had carried copperas water, sediment, and refuse from slack piles several years prior to the purchase of the farm by appellees, and, in fact, for several years prior to the commencement of operations by appellant. Appellees purchased the land with knowledge of these conditions. There is no contention that appellant should be held responsible to appellees for damages caused by the copperas water, slack, and refuse which had been carried by the water of the creek prior to the time that appelleees purchased the farm. Appellant erected a coal washery at its Nortonville Mine in the fall of 1922 for the purpose of washing coal for market. There is a lake near by, and the water used in washing the coal was pumped from the lake of pure water. There were settling basins in connection with the washery which were supposed to receive the coal sediment and refuse from the water used in washing the coal before it passed into the tributaries of Pleasant Run creek.

The evidence established that all of the coal sediment was not deposited in the settling basins, and that coal

dust and other sediment remained in the water when it flowed into Pleasant Run creek. Prior to the erection of the washery, the water in these creeks showed evidence of copperas, but, after the washery was erected, the water flowing in the creeks was a deep black. The proof tends to show that the flow of the water was increased by reason of the pumping from the lake. The carrying of additional sediment and coal dust after the erection of the washery filled up the channels of the creek, and thereby rendered them less fit to carry the entire flow of water, and, as a result, the farm of appellees was more easily overflown. The proof established that the settlings from the water while on the farm seriously damaged the growing crops, and tended to destroy the productivity of the soil. It is fairly well established by the evidence that the farm of appellees and the crops growing thereon during the years complained of were injured as a result of the erection of the washery. If the farm was so injured, it follows, as a matter of course, that appellant is responsible for the damage so caused. It is insisted, however, that the evidence in the case fixed no standard whereby the jury could intelligently measure the diminution of the rental value of the farm during the five years sued for; that, although appellees may have established by the proof a cause of action, they submitted to the jury no evidence which enabled it to measure the damage. A jury cannot be left to speculate as to the amount of the damage. The fact that witnesses may testify that the rental value of the land has been reduced one-half does not help a jury, unless the total rental value of the land for the years in controversy is established. Seaboard Oil Co. v. Britt, 208 Ky. 723, 271 S. W. 1038.

It is necessary for us to consider the evidence introduced which showed, or tended to show, the amount of the damage. In doing so, it is proper to eliminate evidence relating to any damage caused other than by the changed condition brought about by the erection of the washery. Appellees cannot recover for any damages growing out of conditions which existed at the time they purchased the farm, and which conditions were known or might, by the exercise of ordinary prudence, have been known, by them. Young et al. v. Illinois Central R'. Co.. 220 Ky. 322, 295 S. W. 156; Payne, Agent, v. Smith, 198 Ky. 564, 249 S. W. 995; City of Richmond v. Gentry, 136

Ky. 319, 124 S. W. 337, 136 Am. St. Rep. 255; Pence v. City of Danville, 147 Ky. 683, 145 S. W. 385.

It will thus be seen that every element of damages which existed at the time appellees purchased the farm in 1918 must be eliminated from any recovery in their favor. The recovery must be limited strictly to the damages caused by the erection and operation of the coal washery. No damage was sought in the petition other than that which was caused by the washery. An examination of all the testimony offered by appellees shows that the jury might have reached a conclusion that the farm of appellees was damaged, but we are unable to find any evidence of anything sufficiently tangible which justified the jury in returning a verdict for $2,000. We do not mean to say that the verdict is excessive, but we do mean to say that, in our opinion, the evidence is not sufficient to uphold the verdict on account of its vagueness and intangible quality. It is shown that the rental value of the farm had been diminished one-half. The evidence showed that appellees rented the farm for a part of the crop except for one year. The evidence did not show the rental value of the farm in money, and there is nothing to show what was received in cash for the rental value of the farm for the year when it was so rented. There was testimony that, prior to the erection of the washery, such of the farm as was cultivated produced a certain quantity of corn, hay, tobacco, tomatoes, or other farm products. There was also testimnoy to show the average price of such products. Nowhere was there evidence showing that all of the tillable portion of the farm was cultivated in any one year; 130 acres of the farm had been cleared and was tillable.

Counsel for appellees reached the conclusion that the evidence was sufficient by assuming that the entire tillable portion of the farm was cultivated each year. The evidence tended to show otherwise. There was no evidence to show that the damage to crops for each of the years was caused entirely by the washery. It is a matter of common knowledge that low bottom lands overflow frequently and prevent the planting of crops in time for them to mature; also that such lands overflow and destroy crops before they are gathered; also that rainy seasons sometimes prevent the cultivation of such land in a way that will cause it to yield a good crop; also that

droughts interefere.  These things are hazards which the farmer must take, and to the extent, if any, that such things produced the decreased crops appellant cannot be held responsible.

To recover damages in a suit such as this, the plaintiff must show all of the conditions for each year in such a way that a jury may reasonably determine the extent to which the crops were damaged by the wrongful acts of the defendant.  He should show the acreage each year and the amount which would have been produced but for the damage caused by the defendant, and the amount which was produced, and, if the loss in quantity is thus established, and the fair market value of that which was lost is also established, a jury may determine the amount of damage caused by the defendant each year, and that amount the plaintiff may recover, and no more.

The instructions of the court should confine the recovery to the damage proximately caused by the operation of the washery in this case.  The measure of damage is the difference in value of the crops which would have been produced but for the operation of the washery, and the crops which were produced with the washery in operation.  The fair market value of the difference in quantity is all that may be recovered.  Probably that is all that could have been recovered under the instructions of the court as given on the trial of this case.  It is not so much the instructions which were insufficient or improper, but the character of evidence which was offered in support of the cause of action, although the instruction on contributory negligence was erroneous, but not prejudicial to appellant.

The better procedure would have been to establish the fair rental value of the farm in cash without the operation of the washery and the fair rental value of the farm in cash with its operation.  If the witnesses had stated the difference in the cash rental value of the farm with and without the operation of the washery, and had given sufficient reasons as a basis for their evidence, the jury could have more intelligently determined the amount of the damage.

Under the evidence, it appears that the washery may be a permanent structure rather than a temporary structure, but appellant asked for no instruction on that point.

The case of Louisville & N. R. Co. v. Bennett, 196 Ky. 679, 246 S. W. 121, established the principles governing in cases where there could be a single recovery for all damages resulting from a permanent structure and the principles where damages may be recovered as the injuries occur. The appellees may be entitled to recover for recurring injuries under the second principle announced in that case. If the evidence should establish that the washery, although permanent, was negligently constructed, and that the damage might be prevented at a reasonable cost, and if there should be a conflict in the evidence on that point, the question should be submitted to the jury as to whether the defect, if any, could be remedied at a reasonable expense. Chicago, St. Louis & New Orleans R. R. Co. et al v. Bullock et al., 222 Ky. 10, 299 S. W. 1085; Louisville & N. R. Co. v. Bennett, 196 Ky. 679, 246 S. W. 121; Louisville & N. R. Co. v. Bennett, 207 Ky. 776, 271 S. W. 71. But in the present condition of the record there is no question of permanent structure.

Appellant interposed a plea which it called a plea of contributory negligence, which is more in the nature of a plea that appellees should have mitigated the damage by keeping the creek bed free from obstructions by ditching their farm and by otherwise caring for the farm in a way which should have minimized the damage. In the case of Bonte v. Postel, 109 Ky. 64, 58 S. W. 536, 22 Ky. Law Rep. 583, 51 L. R. A. 187, this court appears to have held that the landowner is under no duty to do anything to secure for himself the exercise or enjoyment of the legal right of which he is deprived by reason of the wrongful act of another in casting water upon his land. In the case of Raleigh v. Clark, 114 Ky. 732, 71 S. W. 857, 24 Ky. Law Rep. 1554, this court appears to have reached a contrary conclusion, but the basis of the decision was placed on the ground that there was a contract between the parties relating to the keeping of a ditch free from obstructions. But in the case of Louisville & N. R. Co. v. Moore et al., 101 S. W. 934, 31 Ky. Law Rep. 141, 10 L. R. A. (N. S.) 579, this court appears to have held that it was incumbent on the landowner, who was complaining of damage to his land caused by another landowner throwing water onto his farm, to mitigate or minimize the damage by exercising ordinary care on his part to avoid the damage. In that case the complaining land-

owner could have minimized the damage by digging a ditch from a pond which had been formed on his land to a creek. The latter case was followed in the case of Cincinnati, N. O. & T. P. Ry. Co. v. Gillespie, 130 Ky. 213, 113 S. W. 89, in which case the court directed the following instruction to be given:

"If, however, you believe from the evidence that the plaintiff, by the use of ordinary care and at a reasonable cost, could have cleaned out the spring and removed the cause of pollution, you will, in case you find for her, award her such damages only as will fairly compensate her for the diminution in the value of the use of the property up to the time when she might have so cleaned out the spring, together with the reasonable cost of so cleaning it out."

The same principle as announced in the last-cited case was approved in the case of Cranor Smith Lumber Co. v. Frith (Ky.) 118 S. W. 307. Again in the case of Louisville & N. R. Co. v. Grimes, 150 Ky. 219, 150 S. W. 346, the principle that the damaged landowner cannot recover for any damages which might have been avoided by the exercise of ordinary care is approved.

In view of the later cases of this court, the case of Bonte v. Postel, supra, on this point will not be followed.

Judgment reversed, and cause remanded for proceeding consistent with this opinion.