## Inland Steel Co. v. Isaacs.

Sept. 24, 1940.

John W. Caudill, Judge.

J. Woodford Howard and W. P. Mayo for appellant.

B. M. James and Joe Hobson for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The appellee, Dewey Isaacs, recovered a judgment for $500 against the appellant, Inland Steel Company, for damages to property caused by overflow of water released and drained from its mines and the pollution of a stream. The principal defense is that the company had the right under contract and also as an upper riparian owner to do what was done. Erroneous instructions and excessive verdict are also argued as grounds for reversal of the judgment.

The appellant is engaged in extensive mining operations in Floyd County. The main entries and facilities

a··e on Otter Creek at Wheelwright. The mine had been driven substantially through the mountain to the other side where Muley Branch of Jacks Creek runs. The appellee owns 150 acres of land in those valleys and on the mountain, which are subject, however, to the mineral deed and mining rights of the appellant except one acre at the mouth of Muley Branch on which there was a residence and which was excepted from the conveyance of the minerals.

In 1935 a portion of the mine had become flooded. Several old drainage conduits or exits were cleared and a new opening about four feet square made in the outcrop of the coal in order to release the water which had accumulated in the mine. It appears there were at all times several small outlets for the water down and into Muley Branch. When the larger openings were made a great volume of water ran out and down into Muley Branch which caused it to flow over appellee's land and into and around the house injuring or destroying some of the improvements. The suit is for damages to the 150 acres, but particularly to the house and improvements thereon, including pollution of a well. Appellee's evidence tended to establish a continuing or recurring injury to his property by reason of the drainage of the mine. But the evidence was too vague and intangible to support a verdict for the plaintiff except as to the occasion when the large openings were made and there was a "flash flood" formed in the stream. Perhaps there was another similar occasion of extraordinary drainage, but the evidence concerning it is not clear. On the other side, appellant's evidence tended to prove there was no overflow or damage to the property at any time or to any extent, the natural channel being sufficient to carry the increased flow, and the mine water was not contaminated.

We consider first the contractual right of the mining company. W. R. Hall was the common grantor. In 1903 he executed to appellant's predecessor a mineral deed to 1211.20 acres. It contained the usual comprehensive provisions as to mining rights and the use of the surface in connection therewith. It specifically included "the right to use, divert, dam and pollute watercourses thereon in any and every manner" that the grantee or its successors or assigns should deem "neces-

sary or convenient for the full and free exercise and enjoyment of any and all the property rights and privileges" conveyed; likewise "the right to dump, store and leave upon said land any and all muck, bone, shale, water or other refuse" from the mines. The deed also contained a provision releasing the grantees "from liability or claim or damage" to the grantors or their successors "occasioned by or resulting directly or indirectly from such use or occupation or the exercise of said rights or privileges or any or all of them." Reservation of the land for agricultural purposes was "so far as such use is consistent with the rights" thereby conveyed.

However, following the description of the land and the exception of the larger timber is this clause:

"There is reserved from this conveyance and not hereby conveyed one acre around the dwelling house of Arminda Hall and one acre around the dwelling house of Laconia Hall, leaving a net acreage of 1209.20 acres more or less."

The defendant maintained that the reservation of one acre from its mineral deed was too indefinite and uncertain to be valid. We recognize a technical distinction between a reservation and an exception in a deed, but here the word "reserved" must be deemed to be the same as "excepted," for that was the manifest intention of the parties. Hicks v. Phillips, 146 Ky. 305, 142 S. W. 394, 47 L. R. A., N. S., 878; Allen v. Henson, 186 Ky. 201, 217 S. W. 120. We think a practical construction of this exception makes the description sufficiently certain to protect the curtilage of the house and premises from any injury that might result from the mining operations. If exactness should be demanded the acre should be laid off in a square with the dwelling house in the center. Damron v. Justice, 162 Ky. 101, 172 S. W. 120.

The 150 acres owned by appellee Isaacs embraces this one acre. In determining the rights of the parties the one acre and improvements are to be regarded differently from the remainder for they are outside the terms of the appellant's mineral deed. As to them we must look to the general law regulating the rights of riparian owners.

The owner of upper land is liable for resulting damages to the lower land if he changes the ordinary flow of a stream of water or causes it to collect and then casts it upon the lower estate in a larger volume or in an unusual quantity or swift current, or if he pollutes the stream or injures the land through which it runs, regardless of prudence or care. Nebo Consolidated Coal Company v. Lynch, 141 Ky. 711, 133 S. W. 763; Norton Mining Company v. Wilkie, 224 Ky. 192, 5 S. W. (2d) 1058, second appeal, 232 Ky. 539, 23 S. W. (2d) 942; Steinke v. North Vernon Lumber Company, 190 Ky. 231, 227 S. W. 274; Beaver Dam Coal Company v. Daniel, 227 Ky. 423, 13 S. W. (2d) 254. See particularly, Winchester Water Works Company v. Holliday, 241 Ky. 762, 45 S. W. (2d) 9.

We think that as to the one acre the plaintiff established a cause of action resulting from these extraordinary releases of water. As to other occasions the evidence was vague and indefinite except perhaps as to the pollution of a well by mine water. It may be different on another trial.

As to the rest of the plaintiff's land, the mining company had the right, as defined in its mineral deed, to discharge the water on it as might be ''necessary or convenient.'' Such rights may not be exercised ''arbitrarily, capriciously, oppressively or wantonly,'' but must be exercised with due regard to and consistent with the interest and rights of the owner of the surface. Collins v. Lackey Mining Company, 219 Ky. 31, 292 S. W. 1091; Pike-Floyd Coal Company v. Nunnery, 232 Ky. 805, 24 S. W. (2d) 614; North-East Coal Company v. Hayes, 244 Ky. 639, 51 S. W. (2d) 960. It seems to us that the sudden release of the extraordinary amount of water described by the plaintiff's evidence was not within the rights of the mining company under its deed. But the evidence as to damages was too vague and indefinite to submit the case. The reasonable and natural drainage of the mine into the creek was within the terms of the deed even though it accelerated and increased the volume and the defendant could not be held liable for any resulting damages to the 149 acres.

The trial court should sustain defendant's motion that the plaintiff make his petition more definite and

specific, and then should confine the evidence and the instructions as herein indicated. It seems to us only temporary injuries were proven although the court submitted the measure of the damages as for permanent injury to property upon which the plaintiff did not live. See Norton Mining Company v. Wilkie, supra, and North-East Coal Company v. Hayes, supra.

We may observe that appellee's confidence in his judgment does not excuse him for failing to assist the court by filing a brief in the case.

Judgment reversed.